Art. 21.35B.  Permissible Payments

    (a)  No payment may be solicited or collected by an insurer, its agent, or sponsoring organization in connection with an application for insurance or the issuance of a policy other than:

        (1)  premiums;
        (2)  taxes;
        (3)  finance charges;
        (4)  *policy fees*;
        (5)  agent fees;
        (6)  service fees, including charges for costs described under Article 21.35A of this code;
        (7)  inspection fees; or
        (8)  membership dues in a sponsoring organization.

Tex. Ins. Code Ann. art. 21.35B (West Supp. 2004) (emphasis added).  Service Life argues that by listing premiums and policy fees as separate items that the insurance company is permitted to charge, article 21.35B makes a clear distinction between premiums and policy fees.  The Act, however, authorizes the Commissioner to establish only a premium, not a policy fee.  Thus, the Act should not be construed to deny an insurer the ability to charge policy fees in addition to premiums.  In other words, Service Life argues that although the purpose of the Act is intended to regulate credit life insurance and credit accident and health insurance, it may only regulate premiums, not policy fees.[1]

---

[1] Service Life also directs us to the finance code in support of its argument.  Section 348.202 of the code permits the sale of credit life insurance and credit health and accident insurance in connection with a loan and provides that the cost of the insurance as well as a policy or agent fee charged in connection with the insurance may be included in the loan contract.  Tex. Fin. Code Ann. § 348.202(c) (West Supp. 2004).  Service Life contends that this statute evidences the legislature's intent to permit credit life and credit health and accident insurance companies to charge both a premium rate and an additional policy fee.  Section 342.407 of the code, however, sets out the requirements for including an insurance charge in a loan contract, including that the insurance must be written "in accordance with the Insurance Code."  *Id.* § 342.407 (West Supp. 2004).  Thus, the finance code specifically defers to the insurance code for authorization of insurance charges.  We therefore disagree with Service Life's contention that section 348.202 of the finance code is

4

Today, in *Liberty Mutual Insurance Co. v. Griesing*, No. 03-03-00646-CV, slip op. (Tex. App.—Austin Aug. 26, 2004, no pet. h.), we considered a similar issue, construing article 21.35B of the insurance code. In that case, Griesing challenged her auto insurer's imposition of a state-mandated fee in addition to her auto insurance rate. As with the life insurance industry, the Commissioner annually sets a benchmark rate for each line of automobile insurers; auto insurers may charge rates up to thirty percent above or below the benchmark rate set by the Commissioner. In determining this rate, the Commissioner may consider a number of factors. In defense of its attempt to impose a fee in addition to the rate set by the Commissioner, Liberty Mutual, Griesing's auto insurer, presented an argument in that case similar to the one presented by Service Life here: Because article 21.35B listed both premiums and taxes as permissible items that an insurance company may charge, Liberty Mutual should be allowed to charge its customers both the insurance rate set by the Commissioner as well as a tax (the state-mandated fee). We concluded, however, that the rate is "*the* charge" for a line of insurance. Article 21.35B acts only "as a limit on the ability of the commissioner to consider or of an insurer to include the costs of business in establishing a rate," and that an insurer "may only include those [21.35B] costs when filing rates with the commissioner." *Id.* at 10.

Similarly, we conclude that article 21.35B is not intended to allow insurers to raise revenues by circumventing rate-regulation requirements. Rather, article 21.35B speaks only generally to the types of payments that insurers are permitted to solicit or collect and forbids all types of payments other than those listed in the statute. It does not, however, *entitle* insurers to charge

dispositive of the issue presented here.

5

policyholders for every item listed in the statute. Indeed, the statute is included under the subchapter, "Miscellaneous Provisions," suggesting that it is a general provision and not part of a specific regulatory scheme.

The Act, in contrast, specifically sets out the manner in which insurers may collect payment. And under the more specific Act, credit life insurance and credit accident and health insurance are strictly regulated. In keeping with the Act's regulatory purpose, the Commissioner is authorized to determine a presumptive premium rate, which is "*the* charge" for credit life insurance and credit accident and health insurance. In determining this rate, the Commissioner must consider any relevant data. *See id.* at 9. And among the data that may be considered are the items listed in article 21.35B that a credit life insurance company or a credit accident and health insurance company may charge; these items, if allowed, would be included in the presumptive premium rate, not as separate fees, because the presumptive premium rate is the method by which the Act authorizes these insurance companies to collect their payments.

We note that among the items listed as permissible charges, article 21.35B includes "agent fees." Tex. Ins. Code Ann. art. 21.35B(a)(5). Section 1153.103(e) of the Act, however, also authorizes the Commissioner to consider agent fees in determining the presumptive premium rate. Tex. Ins. Code Ann. § 1153.103(e) ("In determining the presumptive premium rate, the commissioner . . . may request from an insurer or agent any relevant data relating to the presumptive premium rate, including information relating to compensation paid for the sale of credit insurance, expenses, losses, and profits."). Assuming the Commissioner did consider agent fees in determining the presumptive premium rate, Service Life's reading of article 21.35B would allow insurers to collect agent fees twice—once as part of the presumptive premium rate and again as an additional

6

fee authorized by article 21.35B. Such an interpretation conflicts with the Act's stated intent of promoting public welfare by regulating credit life insurance and credit accident and health insurance.

Finally, even if article 21.35B and the Act could not be construed so as to avoid conflict, because the Act is more specific than the general article 21.35B, the provisions in the Act must prevail as an exception to the general provision. *See Brazoria County*, 128 S.W.3d at 738. We therefore overrule Service Life's single issue on appeal.

## CONCLUSION

We hold that the Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance authorizes the Commissioner to set the presumptive premium rate for credit life insurers and credit accident and health insurers. Insurers may charge up to thirty percent above this rate, but may not charge additional fees in order to exceed the thirty percent ceiling. Article 21.35B does not allow the insurers to circumvent the presumptive premium rate by charging additional fees listed in that statute. We therefore affirm the district court's judgment, denying Service Life's request to reverse the Commissioner's order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 26, 2004

7