# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00646-CV

**Liberty Mutual Insurance Company, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, and First Liberty Insurance Corporation, Appellants**

**v.**

**Betty Griesing, Individually and on behalf of all other persons similarly situated, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN301638, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Appellee Betty Griesing sought a partial summary judgment to determine whether appellant Liberty Mutual may lawfully impose a state-mandated fee for theft prevention beyond the automobile insurance rates filed by Liberty Mutual and approved by the commissioner of insurance under a state regulatory regime. The district court granted partial summary judgment in favor of Griesing, declaring that the collection of the theft-prevention fee in addition to the regulated rate is unlawful, that a rule of the commissioner of insurance, which Griesing alleged allowed Liberty Mutual to charge the theft-prevention fee in addition to the regulated rate, does not allow the collection of the fee in addition to the rate, that the rule is void to the extent that it could be read to

permit the collection of the fee in addition to the rate, and that Liberty Mutual breached its insurance contract with Griesing. We affirm the district court's judgment.

## BACKGROUND

The legislature created the Texas Automobile Theft Prevention Authority (ATPA) in 1991 to combat automobile theft in this state. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(37), § 2 (West Supp. 2004). The ATPA is composed of seven members, including the director of the Department of Public Safety, and six other members appointed by the governor. *Id*. § 3. The ATPA's statutory mission is to assess the scope of the automobile theft problem in Texas and to analyze various methods combating the problem. *Id*. § 7. An insurer is required to pay one dollar per insured vehicle per year to the authority ("ATPA fee"). *Id*. § 10(b). By rule, the commissioner of insurance allows automobile insurers to recoup this fee from the policyholder. 28 Tex. Admin. Code § 5.205(a) (West 2002). The rule mandates that insurers must include a printed notice on policies that the fee is charged "in addition to the premium due."[1] *Id*. § 5.205(b)(1), (2).

The underlying suit in this case is a class action brought by Griesing against her auto insurer, Liberty Mutual,[2] alleging that Liberty Mutual improperly charged the ATPA fee in addition

---

[1] The department of insurance publishes the *Texas Automobile Rules and Ratings Manual*, in which it lists as "Rule 15" language identical to that of rule 5.205. As a result, any discussion in this opinion concerning rule 5.205 will also apply to the language contained in the *Texas Automobile Rules and Ratings Manual*.

[2] Griesing also sued four related Liberty Mutual entities: Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, and First Liberty Insurance Corporation. Because all appellants bring this appeal as one entity, we will refer to them as "Liberty Mutual." Liberty Mutual is a rate-regulated automobile insurer subject to article 5.101 of the insurance code. *See* Tex. Ins. Code Ann. art. 5.101 (West Supp. 2004).

to her auto insurance rate. She challenges only the manner in which Liberty Mutual recouped the fee—as a direct pass-through charge instead of as an expense to be considered in establishing the rates regulated under article 5.101 of the insurance code. Both parties filed motions for summary judgment, and the trial court granted partial summary judgment in favor of Griesing, declaring that Liberty Mutual may not lawfully impose the ATPA fee on Griesing outside of the rates filed and established by the insurance companies under article 5.101. It also found that rule 5.205 does not permit the collection of the ATPA fee outside the article 5.101 rate, that rule 5.205 is void to the extent that it could be read to permit the collection of the fee outside the approved rate, and that Liberty Mutual breached its insurance contract. This appeal followed.[3]

## DISCUSSION

Liberty Mutual brings three issues on appeal. First, it argues that it is authorized to collect the fee from policyholders separately from the premium rate. *See* Tex. Ins. Code Ann. § 21.35B (West Supp. 2004). Second, it asserts that rule 5.205 validly permits the collection of the ATPA fee in addition to the approved rate. *See* 28 Tex. Admin. Code § 5.205 (West 2002). Third, it states that no evidence exists on the record that it breached an automobile insurance contract or

---

[3] The district court granted permission to bring this interlocutory appeal. A district court may issue a written order for interlocutory appeal in a civil action not otherwise appealable if the parties agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2004). If application is made to the court of appeals with appellate jurisdiction over the action no later than the tenth day after such order is entered, the appellate court may permit an appeal. *Id.* § 51.014(f). In this case, we granted Liberty Mutual's properly submitted application.

unlawfully charged the fee. Because this appeal comes from a grant of summary judgment in favor of Griesing, we begin with the appropriate standard of review.

The propriety of a summary judgment is a question of law, and we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The standards for reviewing traditional summary judgments are: (1) the movant for summary judgment has the burden of showing that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). When both sides move for summary judgment, as the parties did in this case, and the court grants one motion but denies the other, the reviewing court should review both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

### ATPA Fee and the Article 5.101 Regulated Rate

In Liberty Mutual's first issue, it argues that the district court erred because the ATPA fee is a tax and the insurance code expressly authorizes it to collect "taxes" from policyholders as a charge separate from the regulated rate. *See* Tex. Ins. Code Ann. art. 21.35B. In response,

4

Griesing asserts that the ATPA fee is not a tax and, in any event, article 5.101 of the insurance code creates the only rate that an insurance company can charge a policyholder. Thus, she believes that any fee permitted under article 21.35B must be included in the 5.101 regulated rate.

In order to resolve this controversy, we must construe insurance code articles 5.101 and 21.35B. Statutory construction is a question of law, which we also review *de novo*. *See Johnson City v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Our objective when we construe a statute is to determine and give effect to the legislature's intent. *See Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). Any resolution of an issue of statutory construction must begin with an analysis of the statute. *See Renaissance Park v. Davila*, 27 S.W.3d 252, 256 (Tex. App.—Austin 2000, no pet.); *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 762 (Tex. App.—Austin 2000, pet. denied). We must look at the insurance code as a whole instead of analyzing individual provisions in isolation from each other. *See Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002). We are to consider, among other factors, the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions, even when a statute is not ambiguous on its face. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). In case of conflict between a general statutory provision and a special provision dealing with the same subject, the special provision controls the general. *Brazoria County v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 728, 738 (Tex. App.—Austin 2004, no pet.); *Commercial Standard Fire & Marine Co. v. Commissioner of Ins.*, 429 S.W.2d 930, 933 (Tex. Civ. App.—Austin 1968, no writ).

5

In the specific context of automobile insurance, the legislature created a regulatory scheme for "standard" or "rate-regulated" insurers[4] in article 5.101of the insurance code.[5] In article 5.101, "rate" specifically means "*the* charge for a particular line for each unit of exposure." Tex. Ins. Code Ann. art. 5.101, § 2(5) (West Supp. 2004) (emphasis added). The commissioner annually sets a benchmark rate for each line of automobile insurance. *Id*. §§ 2(1), 3 (West Supp. 2004). This benchmark rate must be a range of value that "promotes stability in that line" and "produces rates that are just, reasonable, adequate and not excessive for the risks to which they apply, and not confiscatory." *Id*. § 3(b). In promulgating this rate, the commissioner may consider a number of factors, including: past and prospective loss experience; the peculiar hazards and experience of individual risks; a reasonable margin for profit; expenses of operation of all insurers; the level and range of rates and rate changes among insurers; and the investment and underwriting experience of insurers. *See id*. § 3(c). The list of factors the commissioner may consider is non-exclusive, and he may employ "any other factor considered appropriate" by him. *Id*. § 3(c)(13). The commissioner may only set the benchmark rate after holding annual public hearings, at which insurers have the opportunity to present actuarial data and make recommendations. *Id*. § 3(d).

---

[4] "County mutual" or "non rate-regulated" automobile insurers are the other statutorily recognized form of automobile insurer and are governed by chapter 912 of the insurance code. *See* Tex. Ins. Code Ann. §§ 912.001-.804 (West 2004).

[5] Before 1991, the insurance business was regulated by the three-member board of insurance and a commissioner of insurance, who was appointed by the board. In 1991, the legislature created the department of insurance. *See* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 1.01, 1991 Tex. Gen. Laws 939, 939. Two years later the legislature abolished the Board. Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 1.02, 1993 Tex. Gen. Laws 2559, 2561. All statutory references to the board of insurance are now deemed to refer to the department of insurance or the commissioner of insurance, as consistent with the respective duties of each. *See* Tex. Ins. Code Ann. § 31.007 (West 2004).

6

This benchmark rate establishes a "flexibility band," a range of rates from thirty percent below to thirty percent above the benchmark rates set by the commissioner, within which an insurer may increase or decrease rate levels by classification without prior approval by the commissioner. *Id*. §§ 2(3), 3(e). An insurer, however, must file its proposed rate with the commissioner and include with its filing "any statistics to support the rates to be used by the insurer as required by rule of the commissioner, including information necessary to evidence that the calculation of the rate does not include disallowed expenses." *Id*. Filed rates within the flexibility band are presumed to be valid and in compliance with the requirements of section 3(e). *Id*. § 3(f). However, after holding a hearing the commissioner may find that the filing does not meet the requirements of section 3(e) and order the filed rate no longer in effect. *Id*. An insurer may not use a rate outside the upper and lower limits of the flexibility band without the prior approval of the commissioner. *Id*. § 3(g).

Article 5.101 also lists factors that may not be considered when setting the benchmark rate or a filed rate, whether within or outside of the flexibility band. *Id*. § 3(c)(4), (d), (e), (o). Among those factors, no rate may include insurer expenses related to administration, lobbying, advertising, damages in a suit against the insurer for bad faith or as fines or penalties for violation of law, contributions to organizations engaged in legislative advocacy or to social, religious, political, or fraternal organizations, fees and penalties imposed on the insurer for civil or criminal violations of law, or fees and assessments paid to advisory organizations. *Id*. § 3(o). In addition, the commissioner may disallow "any unreasonably incurred expenses," as determined by the commissioner after notice and hearing. *Id*. § 3(o)(9).

The questions of unreasonably high profits or danger of insolvency are at the heart of the regulatory purpose. *Id*. § 3A (West Supp. 2004). Rates submitted by insurers to the commission are considered excessive if "the rate is likely to produce a long-term profit that is unreasonably high." *Id*. § 3A(b)(1). A rate is insufficient if it "endangers the insolvency of an insurer using the rate." *Id*. § 3A(b)(2)(A). Consumers must be guaranteed a stable insurance market; article 5.101 creates stability by capping prices to ensure customers are not priced out of the market. *Id*. § 3A(b)(1). Conversely, the statute maintains stability by ensuring that prices are not set so low as to risk the insurer's solvency. *Id*. § 3A(b)(2)(A). Finally, as a general provision no insurer—including automobile insurers—may solicit or collect any "payment" in connection with an insurance policy other than

    (1)  premiums;

    (2)  taxes;

    (3)  finance charges;

    (4)  policy fees;

    (5)  agent fees;

    (6)  service fees;

    (7)  inspection fees; or

    (8)  membership dues in a sponsoring organization.

*Id*. art. 21.35B(a).

When we consider articles 5.101 and 21.35B together, we note that article 5.101 creates a highly regulated environment for automobile insurance with specific goals, factors, and procedures. The commissioner may consider an insurer's "expenses of operation" when setting the benchmark rate under article 5.101. *See id*. art. 5.101, § 3(c). In addition, the commissioner has wide discretion to disallow "unreasonably incurred expenses" when setting the benchmark rate, when reviewing an insurer's filed rate, and when approving or disapproving an insurer's application for a rate outside of the flexibility band. *See id*. § 3(d), (e), (i), (o). In the context of this regulatory scheme, article 21.35B acts as a limit on the ability of the commissioner to consider, or of an insurer to include, the costs of business in establishing a rate. That is, because an insurer may collect *no* payment other than premiums, taxes, finances charges, policy fees, and the other article 21.35B factors, insurers may only include those costs when filing rates with the commissioner. In addition, although the commissioner has broad authority to consider factors in addition to those enumerated in section 3(c) of article 5.101, he may not consider any costs *not* enumerated in article 21.35B.

Liberty Mutual argues that the "premiums" allowed by article 21.35B are equivalent to article 5.101 "rates."[6] It also asserts that article 5.101 does not cap the total charge to the insurance consumer at the article 5.101 rate. However, the comprehensive regulatory scheme the legislature created in article 5.101 supports the opposite conclusion. The rate is "*the* charge" for a line of insurance. *Id*. § 2(5) (emphasis added). Not only must the commissioner hold extensive hearings when setting the benchmark rate, but also insurers must file supporting statistics and

---

[6] In its brief, Liberty Mutual refers to the article 5.101 rate as a "premium rate." That term does not appear in the statute. *See* Tex. Ins. Code Ann. art. 5.101 (West Supp. 2004).

information with their proposed rates even when that rate is within the flexibility band. *Id*. § 3(e). Insurers must include evidence to show that the calculation of the filed rate does not include disallowed expenses. *Id*. In the specific context of automobile insurance, disallowed expenses include all expenses not included in article 21.35B *and* all those enumerated in section 3(o) of article 5.101, even if those section 3(o) expenses would ordinarily be permitted under article 21.35B. When the legislature listed "premiums" as one of several "payments" an insurer could charge, it can only have meant that a premium is a component charge of the "rate."

Liberty Mutual asserts that the list of allowable charges in article 21.35B includes only one article 5.101 regulated charge (premiums) and seven unregulated charges. If this interpretation were correct, it would then follow that when the Commissioner sets rates he would only be concerned with risk assessment and the appropriate dollar amounts to adequately cover those risks—what Liberty Mutual calls the "premium." This construction, however, does not comport with the comprehensive regulatory intent expressed in the statute. When setting the benchmark rate, the commissioner is clearly allowed to consider factors other than risk-assessment—a reasonable margin for profit, expenses of operations, and any other factor he deems appropriate. *See id*. § 3(c). These factors, in addition to the risk-assessment, include the categories of the permissible payments of article 21.35B.

As a result, Liberty Mutual's interpretation would yield unregulated add-ons to the price of a regulated insurance premium. Consumers would not be protected by the promises of regulation because the commissioner would not be able to exercise any oversight over an insurer's "discretionary" addition of article 21.35B factors to a consumer's bill. In fact, its interpretation

10

would allow insurers to charge consumers twice for each of the unregulated factors. An insurer could first make recommendations to the commissioner for setting the benchmark rate and include those costs in its suggestions. In filing its actual rates, the insurer would also be able to include those factors. Then, when billing a consumer the insurer would be able to charge the regulated rate—already based in part on article 21.35B factors in addition to a reasonable margin for profit and the expenses of operation—and add the article 21.35B factors onto the regulated rate when generating a policyholder's total charge. This result would undermine the regulatory structure the legislature created for automobile insurance.

We conclude that article 21.35B of the insurance code does not create a set of charges immune from the commissioner's rate-setting procedures. Rather, it limits the broad discretion of the commissioner of insurance to include factors enumerated in article 21.35B.[7] Although both parties briefed the issue whether or not the ATPA fee is a tax as listed in article 21.35B, we need not determine that issue at this time. Griesing does not dispute that the ATPA fee may be included in the article 5.101 rate, and in either case we have held that an insurer may not charge the ATPA fee separate from the regulated rate. We overrule Liberty Mutual's first issue on appeal.

### Validity of 28 Texas Administrative Code Section 5.205

In Liberty Mutual's second issue, it argues that the commissioner's rule, as adopted in 28 Texas Administrative Code section 5.205 (rule 5.205), allowing insurers to "recoup" the ATPA

---

[7] We note that our conclusion is consistent with *American Alliance Insurance Co. v. Board of Commissioners*, 126 S.W.2d 741 (Tex. Civ. App.—Austin 1939, writ ref'd), because our reading of articles 5.101 and 21.35B requires the commissioner of insurance to include taxes when setting the benchmark rate and when approving a filed rate.

fee from policyholders, is a valid exercise of the commissioner's regulatory authority. As a result, it believes that it can rely on rule 5.205 to add the ATPA fee onto the rate charged an individual policyholder. *See* 28 Tex. Admin. Code § 5.205.

In exercising the powers and the broad authority granted by the legislature, the only requirement of administrative agencies is that their rules and regulations must be consistent with the constitution and statutes of this state. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968). In determining whether a particular administrative agency has exceeded its rule-making powers, we must ask if the rule's provisions are in harmony with the general objectives of the act involved. *Id*. A rule of an administrative agency is void if it conflicts with a statute. *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 154 (Tex. App.—Austin 2001, no pet.).

By rule, the insurance commissioner authorizes each insurer to "recoup [the ATPA] fee from the policyholder." 28 Tex. Admin. Code § 5.205(a). Any insurer recouping the fee "must include on or with each motor vehicle insurance policy. . . a notice conforming with either paragraph (1) or paragraph (2)" of the rule. *Id*. § 5.205(b). These notices inform the policyholder that the ATPA fee "is payable in addition to the premium due under" the policy. *Id*. § 5.205(b)(1), (2).[8]

---

[8] Rule 5.205 requires the insurer to state on the automobile policy either

> NOTICE: A fee of $ _____ is payable in addition to the premium due under this policy. This fee reimburses the insurer, as permitted by 28 TAC § 5.205, for the $ 1.00 fee per motor vehicle year required to be paid to the Automobile Theft Prevention Fund under Texas Civil Statutes, Article 4413(37), § 10, which became effective on June 6, 1991

or

> NOTICE: The Automobile Theft Prevention Authority fee is payable in addition

To the extent that rule 5.205 allows insurers to recoup the ATPA fee within the regulated rate and mandates only that insurers include a written notice to consumers if they do so, the rule is valid. We overrule Liberty Mutual's second issue.

*Breach of Contract*

In its brief, Liberty Mutual states a third issue in this way: "Whether there is any evidence that Liberty Mutual breached an automobile insurance contract or unlawfully charged the ATPA fee." However, Liberty Mutual presented no argument on this issue, either in the form of cited authority or argument concerning the record. *See* Tex. R. App. P. 38.1(h). Bare assertions of error, without citations to authority, waive error. *Trenholm v. Radcliff*, 646 S.W.2d 927, 934 (Tex. 1983); *see also Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive issues due to inadequate briefing). We overrule Liberty Mutual's third issue.

## CONCLUSION

We hold that the rate approved by the commissioner of insurance under article 5.101 of the insurance code is the only amount that an automobile insurer may lawfully charge a policyholder. In a regulated insurance industry, consumers may expect that their total charge has

---

to the premium due under this policy. This fee reimburses the insurer, as permitted by 28 TAC § 5.205, for the $ 1.00 fee per motor vehicle year required to be paid to the Automobile Theft Prevention Fund under Texas Civil Statutes, Article 4413(37), § 10, which became effective on June 6, 1991.

28 Tex. Admin. Code § 5.205(b)(1), (2) (2002).

13

been approved by the commissioner. Article 21.35B of the insurance code, in permitting insurers to collect several types of "payment" from a policyholder, limits the discretion of the commissioner in considering factors when setting or approving rates. Thus, the Automobile Theft Prevention Authority fee, regardless of its status as a tax or another type of charge, must be included in the article 5.101 rate if it is to be charged to a policyholder. As a result, Liberty Mutual must include the ATPA fee in its article 5.101 rate in order to charge it to policyholders.

We also conclude that the commissioner's rule allowing insurers to recoup the ATPA fee from policyholders within the regulated rate does not contradict the legislature's statutory scheme of regulation. *See* 28 Tex. Admin. Code § 5.205. Rule 5.205 does not validate collection of the ATPA fee outside of the article 5.101 regulated rate. In addition, the rule is void to the extent that it could be read to permit that method of collection.

We affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 26, 2004

14