IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0016
════════════
 
Mid-Century Insurance 
Company of Texas
and Texas Farmers Insurance 
Company,
Petitioners,
 
v.
 
Shefqet Ademaj,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Twelfth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 17, 
2006
 
 
            
Justice Green delivered the opinion of the Court, in 
which Chief Justice Jefferson, Justice 
Wainwright, Justice Brister, Justice Johnson, and Justice Willett joined.
 
            
Justice O’Neill filed a concurring 
opinion, in which Justice 
Medina joined.
 
            
Justice Hecht did not participate 
in the decision.
 
 
            
This case concerns the convergence of three provisions enacted by the Texas 
Legislature during the 1991 legislative session: (1) article 4413(37), section 2 
of the Revised Civil Statutes, creating the Texas Automobile Theft Prevention 
Authority (the Authority) as a division of the Texas Department of 
Transportation; (2) article 21.35B(a) of the Insurance Code, detailing the types 
of payments insurers generally may solicit or collect;[1] and (3) article 5.101 of the Insurance 
Code, outlining a flexible rating program and rate-filing process to be used by 
all automobile insurers in Texas.[2]
            
Shefqet Ademaj and others (Ademaj, collectively) brought a class action suit 
against Mid-Century Insurance Company of Texas and Texas Farmers Insurance Company 
(Mid-Century, collectively), and sought a declaratory judgment on the manner in 
which Mid-Century could lawfully recoup the legislatively imposed Authority fee 
from insureds. The trial court ruled in Ademaj’s favor, and the court of appeals 
affirmed. We reverse the court of appeals’ judgment and render a take-nothing 
judgment in favor of Mid-Century.
I
            
Article 4413(37) funds the Authority’s automobile theft prevention programs by 
requiring each automobile insurer to pay a fee of $1 per policy year for every 
automobile insured. Tex. Rev. Civ. 
Stat. art. 4413(37), § 10(b). The commissioner of the Texas Department of 
Insurance authorized automobile carriers to recoup the fee from insureds so long 
as the carriers provided insureds notice that, as part of the policy, they were 
being charged the fee “in addition to the premium due under this policy.” 28 
Tex. Admin. Code § 5.205 (b)(1), 
(b)(2) (1992). Article 21.35B applies to all insurers and outlines payments 
insurers may solicit or collect from policyholders. The statute provides, in 
pertinent part:
 
(a) No payment may be solicited or collected by an 
insurer, its agent, or sponsoring organization in connection with an application 
for insurance or the issuance of a policy other than:
(1) premiums;
(2) taxes;
(3) finance charges;
(4) policy fees;
(5) agent fees;
(6) service fees, including charges for costs 
described under Article 21.35A of this code;
(7) inspection fees; or
(8) membership dues in a sponsoring 
organization.
 
 
Art. 21.35B(a). Article 5.101 of the Texas Insurance 
Code, entitled “Flexible Rating Program for Certain Insurance Lines,” applies to 
automobile insurers and authorizes the commissioner to set a benchmark rate for 
each line of personal automobile insurance sold in Texas. Article 5.101, §§ 
1(a), 3(b). Under Article 5.101, once the commissioner establishes “flexibility 
band[s]”—acceptable rate ranges for each line of insurance—insurers must file 
detailed information on proposed rates which, if within the flexibility bands, 
are presumed valid. Id. § 3(e)–(f).
            
Ademaj alleged in a motion for summary judgment that Mid-Century illegally 
collected the Authority fee because the fee was not included in Mid-Century’s 
Article 5.101 rate-filing. Mid-Century countered with their own motion for 
summary judgment, alleging that Article 21.35B(a) authorized them to charge the 
Authority fee as an expense, and that they were therefore not required to 
include the fee in their Article 5.101 rate-filing. Mid-Century and Ademaj 
ultimately filed a joint motion to sever Ademaj’s claims from the remaining 
plaintiffs’ claims or, alternatively, for a written order for interlocutory 
appeal of the summary declaratory judgment. The parties stipulated the 
following:
            
1. Ademaj paid a total of $1 in Authority fees to Mid-Century Insurance 
Company.
            
2. Ademaj paid a total of $3 in Authority fees to Texas Farmers Insurance 
Company.
            
3. All payments Ademaj made for private passenger automobile insurance coverage, 
other than the Authority fees, were legally authorized.
            
4. Neither Mid-Century nor Texas Farmers charged Ademaj the Authority fee as 
part of the premium for private passenger automobile insurance coverage.
            
5. Neither Mid-Century nor Texas Farmers has included the Authority fee in their 
rates or in their rate-filings made with the commissioner under Article 
5.101.
            
The trial court issued a partial summary judgment in favor of Ademaj. The court 
of appeals affirmed the trial court’s ruling, holding insurers are required to 
include the Authority fee in their Article 5.101 rate-filings with the 
commissioner. 202 S.W.3d 176, 184–85 (Tex. App.—Tyler 2004). Mid-Century timely 
filed this appeal.
II
            
We review a trial court’s grant of summary judgment de novo. Provident Life 
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). When, as 
here, both parties moved for summary judgment and the trial court granted one 
and denied the other, we “determine all questions presented and render the 
judgment the trial court should have rendered.” Argonaut Ins. Co. v. 
Baker, 87 S.W.3d 526, 529 (Tex. 2002). Our objective in construing a statute 
is to give effect to the Legislature’s intent. Tex. Gov’t Code § 312.005; Am. Home 
Prods. Corp. v. Clark, 38 S.W.3d 92, 95 (Tex. 2000). Our interpretation of 
these statutes begins with their plain meaning, Fitzgerald v. Advanced Spine 
Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999), which we derive “from 
the entire act and not just from isolated portions.” State v. Gonzalez, 
82 S.W.3d 322, 327 (Tex. 2002). Thus, we “read the statute as a whole and 
interpret it to give effect to every part.” Id. (quoting Jones v. 
Fowler, 969 S.W.2d 429, 432 (Tex. 1998)).
            
The parties agree that the Insurance Code authorizes insurers to recoup the 
Authority fee amount from insureds, and disagree only over which specific 
articles and conditions govern the payments. The principal issue is whether, as 
Ademaj argues, insurance carriers must include the Authority fee within the 
rates filed under Article 5.101, or whether, as Mid-Century argues, carriers may 
recoup the fee independently under Article 21.35B. We must determine whether the 
rate arising from the Article 5.101 rate-filing process is: (1) merely the 
premium to which an insurer may add the charges enumerated in Article 21.35B; or 
(2) the sum of all permissible charges, including any Article 21.35B charges the 
insurer requires the policyholder to pay. The court of appeals construed Article 
5.101 to require the latter. 202 S.W.3d at 184. We disagree.
            
First, we construe Article 21.35B as an affirmative source of an insurer’s 
authority to solicit and collect payments. Article 21.35B(a) provides that “[n]o 
payment may be solicited or collected . . . other than” the eight 
enumerated categories of payments, creating a prohibition with respect to 
nonenumerated payments and an authorization with respect to the 
enumerated elements. Article 21.35B(a) (emphasis added). Construing Article 
21.35B(a) as a mere outline of the Article 5.101 rate-making considerations 
renders it meaningless to automobile insurers and ignores the statute’s 
application to other types of insurers.[3] Instead, Article 21.35B authorizes the 
solicitation and collection of premiums, taxes, and the other enumerated 
payments unless some intervening statute provides otherwise.[4]
            
Second, we construe the Article 5.101 “rates” to constitute “premiums” as 
contemplated by Article 21.35B(a). Despite extensive briefing on the issue, we 
are not convinced that technical etymologies of Article 21.35B’s “premium” and 
Article 5.101’s “rate” control our construction.[5] Because Article 21.35B addresses all 
insurers, it cannot speak in the exact terms of the various statutes addressing 
subclasses of insurers, including Article 5.101. Instead, we utilize the plain 
meanings that produce the most coherent overall scheme. “The foundation of 
insurance is . . . risk distribution, and premiums are a function of calculated 
risk.” In re Tex. Ass’n of Sch. Bds., 169 S.W.3d 653, 658–59 (Tex. 2005) 
(“The payment of the premium by the insured and the assumption of a specified 
risk by the insurer are the essential elements of the contract of 
insurance.”); accord Rosenstock v. Wheeler, 310 S.W.2d 350, 353 
(Tex. Civ. App.—Houston 1958, writ ref’d) (“A premium is the consideration paid 
by a person for insurance protection or coverage.”). In addition to “premiums,” 
Article 21.35B recognizes that insureds incur, as part of insurance policies, 
various other payment obligations not closely related to risk and cost 
distributions. Article 21.35B(a). Albeit with different terms, Article 5.101 
focuses on the fundamental considerations of risk distribution. Article 5.101 
produces “rates” for each “line of insurance” by balancing “risks” against 
various economic variables, such as “loss experience,” “peculiar hazards,” 
“profits,” and “expenses of operation,” among others. Art. 5.101, § 3(a), (c). 
Thus, the Article 5.101 rate process produces the premiums that Article 21.35B 
authorizes insurers to solicit and collect.
            
Ademaj argues that Article 5.101 requires the commissioner’s inclusion of all 
costs and expenses of operation, including all taxes, in the Article 5.101 rate. 
See id. § 3(b)(4), 
3(q). Ademaj further asserts that the only expenses that could be excluded from 
the rate were those listed in section 3(o). Because taxes and fees generally, 
and the Authority fee specifically, are not listed in section 3(o), Ademaj 
argues that Article 5.101 governs the Authority fee exclusively. We 
disagree.
            
Although Article 5.101’s rate-setting scheme may account for the 
Authority fee, it need not always do so to the exclusion of the Article 21.35B 
payment authorization. Article 5.101 simply does not employ mandatory language: 
“[T]he commissioner may give due consideration to” the expenses 
enumerated in section 3(c); nothing in Article 5.101 requires the 
commissioner to use the Authority fee when calculating the benchmark rate. 
Id. § 3(c) (emphasis added). As a result, even if the commissioner 
could have used the Authority fee in the benchmark rate calculation under 
section 3(c)(4) as an “expense” or under section 3(c)(13) as an “appropriate” 
factor, Article 5.101’s permissive terms did not compel him to do so.[6]
            
Having determined that payments may fall under either Article 5.101 or Article 
21.35B, we need not determine where the Authority fee most appropriately falls 
because the commissioner has already done so. “Construction of a statute by the 
administrative agency charged with its enforcement is entitled to serious 
consideration, so long as the construction is reasonable and does not contradict 
the plain language of the statute.” Tarrant App. Dist. v. 
Moore, 845 S.W.2d 820, 822 (Tex. 1993).[7] The Insurance Code charges the 
commissioner with enforcing the Article 5.101 rate system in several ways. Under 
Article 5.101, the commissioner must “adopt a rating manual,” and the manual 
must “be used by all insurers” unless they receive permission from the 
commissioner to use their own. Article 5.101, § 3(k). Article 5.101 also directs 
the commissioner to “promulgate by rule a benchmark rate” for each line of 
insurance. Id. § 3(b). Finally, section 3(c) gives the commissioner the 
power to decide what “consideration” each potential rate factor is “due.” 
Id. § 3(c). Even if the commissioner has no explicit power to enforce 
Article 21.35B, the various Article 5.101 enforcement responsibilities empower 
him to make the threshold determination of whether or not a payment should be 
governed by Article 5.101 at all.
            
To that end, the commissioner promulgated Rule 15, which does not require 
insurers to include the Authority fee in their Article 5.101 flex filings. 
Instead, Rule 15 directs insurers to collect the Authority fee from 
policyholders and simply notify them that the fee was being collected “in 
addition to the premium due” under the policy. 28 Tex. Admin. Code § 5.205(b). The 
commissioner’s interpretation deserves deference because it accords with the 
terms of the statute. First, the commissioner could reasonably have determined 
that the Authority fee falls within Article 21.35B(2)’s authorization for the 
solicitation and collection of “taxes” because the Legislature imposed the fee 
to finance the Authority. See Tex. Rev. Civ. Stat. art. 4413(37), § 
10 (“The fee imposed by this section is in addition to any other fee or tax 
imposed by law on an insurer.”); Conlen Grain & Mercantile, Inc. v. Tex. 
Grain Sorghum Producers Bd., 519 S.W.2d 620, 623 (Tex. 1975) (“A tax is a 
burden or charge imposed by the legislative power of the state upon persons or 
property to raise money for public purposes.”). Moreover, we see no place for 
the commissioner to include the Authority fee in the benchmark rate because it 
is imposed as a flat fee. Whereas taxes and fees charged as a percentage of 
premium spread nicely throughout the entire menu of lines of available 
insurance, a flat fee such as the Authority fee cannot be so easily distributed. 
Because insurers’ variable flex filings range from 30% below to 30% above the 
benchmark, including the Authority fee in the Article 5.101 calculation will 
distort the $1 recoupment in a substantial set of cases. Thus, we defer to the 
commissioner’s conclusion that insurers wishing to recoup the Authority fee need 
not include it in their Article 5.101 filings.[8]
            
Ademaj asserts three final objections to this construction, none of which we 
find persuasive. Ademaj points to American Alliance Insurance Co. v. Board of 
Insurance Commissioners, 126 S.W.2d 741, 744 (Tex. 1939), and Article 
5.101’s requirement that rates be “just, reasonable, [and] adequate” for the 
proposition that the Article 5.101 rates must include all taxes. See 
Article 5.101, § 3(b)(2); Public Util. Comm’n v. Houston Lighting & Power 
Co., 748 S.W.2d 439, 439–40 (Tex. 1987). Even if those cases apply to the 
statute here,[9] they do not require what Ademaj 
asserts. At most, they require only that taxes be “considered,” Houston 
Lighting & Power, 748 S.W.2d at 441, and “taken into account,” Am. 
Alliance, 126 S.W.2d at 742. They do not require that a fee 
necessarily be included in the final charge calculation. The commissioner met 
this standard by considering “expenses of operation” and other “appropriate” 
factors during the rate setting process, and by promulgating Rule 15, which 
represents the commissioner’s explicit consideration of the tax as it affects 
insurance rates. See Article 5.101, § 3(c)(4), (12); 28 Tex. Admin. Code § 5.205(a). As a 
result, the commissioner met the statutory requirement of producing section 
3(b)(2)’s “just, reasonable, [and] adequate” rates, even without including the 
Authority fee.
            
Ademaj also asserts the filed rate doctrine to argue that interpreting Article 
5.101 as applying only to premium charges will allow insurers to wrongfully 
impose charges on policyholders that were never filed with the commissioner. 
Such an interpretation, Ademaj asserts, would violate the filed rate doctrine 
because the filed rate of rate-regulated automobile insurers would not reflect 
the actual charge for automobile insurance. Ademaj cites AT&T v. Central 
Office Telephone, Inc. presumably for the proposition that the rate an 
insurer duly files is the only lawful charge it may pass on to policyholders. 
See 524 U.S. 214, 222 (1998). But, while Ademaj is correct that the filed 
rate doctrine applies in Texas, see Sw. Elec. Power Co. v. Grant, 73 
S.W.3d 211, 216–17 (Tex. 2002), he miscites the United States Supreme Court’s 
holding in AT&T and is wrong about how the filed rate doctrine 
applies in Texas. AT&T described the filed rate doctrine only as it 
applied within the confines of the Interstate Commerce Act. See 524 U.S. 
at 222 (“Under the Interstate Commerce Act, the rate of the carrier duly filed 
is the only lawful charge.”). We held in Southwestern Electric Power Co. 
that “[t]he doctrine holds that a tariff filed with and approved by an 
administrative agency under a statutory scheme is presumed reasonable unless a 
litigant proves otherwise.” 73 S.W.3d at 216. Nowhere in that decision did we 
hold that the doctrine prohibits an insurer from recouping a fee from insureds 
outside the rate when the appropriate regulatory agency has promulgated a valid 
rule permitting the insurer to do so. The application of the filed rate doctrine 
in this case is necessarily circumscribed by the legislative grant of authority 
to the commissioner to regulate premiums and cannot be applied to overrule the 
commissioner’s exercise of discretion not to include the Authority fee in the 
premium regulated under Article 5.101.
            
Finally, Ademaj warns that reversing the court of appeals’ decision will result 
in double charging of the Authority fee by insurers and deregulation of the 
automobile insurance industry. These fears are unfounded. This case stems from 
the commissioner’s regulation of rates rather than any trend toward 
deregulation. The commissioner authorized insurers to recoup only the $1 
Authority fee from policyholders. Any insurer choosing to charge the fee to 
policyholders both within and outside of the Article 5.101 rate would be 
charging double that which the commissioner permits and, as is the case for any 
type of impermissible double charging, would be subject to administrative 
penalties. See Tex. Ins. Code § 
84.021.[10]
            
Service Life & Casualty Insurance Co. v. Montemayor demonstrates the 
commissioner’s willingness to confront these feared acts of double charging. 
See 150 S.W.3d 649 (Tex. App.—Austin 2004, pet. denied). In 
Montemayor, the insurer attempted to gain the commissioner’s approval to 
charge a $50 policy fee in addition to its premium rate. Id. at 650. The 
commissioner refused to approve the fee, and an administrative law judge found 
the insurer had no legal authority to charge it. Id. The commissioner 
then signed an order agreeing with the administrative law judge, and the 
district court affirmed the commissioner’s order. Id. The insurer 
appealed, arguing it had authority under Article 21.35B to charge premiums and 
policy fees as separate items under the “Act for the Regulation of Credit Life 
Insurance and Credit Accident and Health Insurance.” Id. 
at 651.[11] The court of appeals, concluding the 
insurer implemented the fee solely to increase its revenue and profits, agreed 
with the commissioner and rejected the insurer’s attempt to recoup the fee. 
Id. at 653. Thus, the result in Montemayor signals that the 
commissioner is well positioned to protect insureds from abusive and unregulated 
charges under his construct of Article 5.101.[12]
III
            
Article 21.35B authorizes all insurers to solicit and collect both premiums and 
taxes. The Article 5.101 rate-making process produces auto insurance premiums, 
and in the process gives the commissioner the discretion to determine whether 
payments should be considered as part of the Article 5.101 rate (and, thus, 
Article 21.35B premium) or instead should be considered as another Article 
21.35B payment. Because the commissioner made a reasonable determination that 
the Authority fee should be charged directly and not as part of the Article 
5.101 premium, we hold that Mid-Century properly recouped the fee from Ademaj. 
Accordingly, we reverse the court of appeals’ judgment and render a take-nothing 
judgment in favor of Mid-Century Insurance Company of Texas and Texas Farmers 
Insurance Company.
 
            
_____________________________
            
PAUL W. GREEN
            
JUSTICE
 
 
OPINION DELIVERED: November 30, 2007










[1] 
Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.17, 1991 Tex. Gen. Laws 1063, 
amended by Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 12.49, 1993 
Tex. Gen. Laws 2666, amended by Act of May 18, 1995, 74th Leg., R.S., ch. 
380, § 2, 1995 Tex. Gen. Laws 2928 [hereinafter Article 21.35B]. Though Article 
21.35B has been recodified, the parties refer to the law as it stood when the 
suit was filed, and for the purposes of this opinion we do the same. Act of May 
20, 2003, 78th Leg., R.S., ch. 1274, § 26, 2003 Tex. Gen. Laws 4138 (current 
version at Tex. Ins. Code § 
550.001). 

[2] 
Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 2.01, 1991 Tex. Gen. Laws 952, 
amended by Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 6.04, 1993 
Tex. Gen. Laws 2603, amended by Act of May 25, 1995, 74th Leg., R.S., ch. 
984, § 1, 1995 Tex. Gen. Laws 4936, amended by Act of May 25, 1997, 75th 
Leg., R.S., ch. 942, §§ 1–2, 1997 Tex. Gen. Laws 2950, amended by Act of 
May 27, 1997, 75th Leg., R.S., ch. 1330, § 18, 1997 Tex. Gen. Laws 5030, 
amended by Act of May 22, 2001, 77th Leg., R.S., ch. 1071, § 1, 2001 Tex. 
Gen. Laws 2359 [hereinafter Article 5.101]. The lawsuit, filed in 2002, is 
governed by the statute as it read after the 2001 amendments, and though we note 
that our reasoning applies to all versions of the statute, we cite the 2001 text 
for the remainder of this opinion. We further note that effective December 1, 
2004, the Legislature replaced Article 5.101 with Article 5.13-2. Act of June 2, 
2003, 78th Leg., R.S., ch. 206, § 6, 2003 Tex. Gen. Laws 925. In 2005, the 
Legislature repealed Article 5.13-2, effective April 1, 2007. Act of May 24, 
2005, 79th Leg. R.S., ch. 727, § 18(d), 2005 Tex. Gen. Laws 2187.

[3] 
The concurrence argues that construing Article 21.35B(a) as an affirmative source of authority renders 
21.35B(c), which uses similar authorizing language, meaningless. ___ S.W.3d at 
___. But because 21.35B(a) covers only “application” and “issuance,” while 
21.35B(c) covers “issuance” and “renewal,” 21.35B(c) is meaningful no matter how 
21.35B(a) is read. See Article 21.35B(a), (c).

[4] 
The concurrence agrees with our conclusion that Mid-Century can recoup the 
Authority fee without including the fee in its Article 5.101 filing, but rejects 
our interpretation of Article 21.35B as an affirmative source of authorization, 
arguing that 21.35B cannot authorize payments. ___ S.W.3d at ___. But under the 
concurrence’s interpretation, neither can Article 5.101, for all parties 
stipulated that the Authority fee was not charged as part of a premium and was 
not included in Mid-Century’s Article 5.101 rates. Instead, the parties agree 
that Mid-Century charged Ademaj the fee directly. As a result, the 
concurrence attempts to sustain the fee recoupment with an affirmative 
authorization from neither Article 5.101 nor Article 21.35B. To impose this fee 
by executive fiat violates Article 21.35B’s “no payment may be solicited . . . 
other than” language (even under the concurrence’s restrictive interpretation), 
as well as settled Texas administrative law. See Cont’l Cas. 
Co. v. Downs, 81 S.W.3d 803, 807 (Tex. 2002) (“Construction of a statute by 
the agency charged with its enforcement is entitled to serious consideration 
only if that construction is reasonable and does not contradict the statute's 
plain language.” (emphasis added)).

[5] 
Article 5.101’s applicability provisions provide the best textual evidence and 
support our holding today. After setting out the Article’s general scope in 
section 1(a), Article 5.101 provides that “[n]otwithstanding Subsection(a) of 
this section, this article does not apply to premium rates” for certain 
other insurance. Article 5.101, §2(c) (emphasis added).

[6] 
The concurrence also argues that Article 5.101 requires the commissioner to 
consider the Authority fee, emphasizing the “excluding only” language in section 
3(c)(4). ___ S.W.3d at ___. We agree that the 
“excluding only” language absolutely prohibits the commissioner’s consideration 
of the section 3(o) elements. But no matter how strongly section 3(c)(4) 
excludes consideration of the section 3(o) elements, whatever remains is still 
subject to section 3(c)'s overriding permissive term “may.” Article 5.101, § 
3(c), (o). At most, the commissioner need only give “due consideration” to the 
elements not excluded by section 3(o), a mandate that emphasizes the 
commissioner's continuing discretion to consider some expenses but not others. 
Id. § 
3(c).

[7] 
See also State v. Public Util. Comm’n of 
Tex., 883 S.W.2d 190, 196 
(Tex. 1994) (“[T]he contemporaneous construction of a statute by the 
administrative agency charged with its enforcement is entitled to great 
weight.”); Tex. Employer’s Ass’n v. Holmes, 196 S.W.2d 390, 395 (Tex. 
1946) (“[T]he practical interpretation of the Act by the agency charged with the 
duty of administering it is entitled to the highest respect from the courts.”); 
Stanford v. Butler, 181 S.W.2d 269, 273 (Tex. 1944) (“The contemporaneous 
construction of an act by those who are charged with the duty of its enforcement 
. . . is worthy of serious consideration as an aid to interpretation, 
particularly where such construction has been sanctioned by long 
acquiescence.”) (quoting 39 Tex. 
Jur. Statutes § 125 (1936)). 

[8] 
Our holding here is limited, of course, to these specific circumstances: an 
insurer’s charge both authorized by Article 21.35B and approved in advance by a 
commissioner’s rule. While we might hold differently with respect to a charge 
unauthorized by Article 21.35B and/or unauthorized by the commissioner, we need 
not address those questions here.

[9] 
While we did say in American Alliance 
that “the basic principles of rate-making in fire insurance” are not 
substantively different “from those in ‘the ordinary system of utility 
rate-making,’” the very next sentence is pertinent as well. See 126 
S.W.2d at 744. “Some elements affecting the subject that are 
lacking in the former may be present in the latter; and vice versa.” Id. 
Houston Lighting & Power is inapplicable to this case insofar as it deals with 
electric utility rate-making as opposed to automobile insurance 
regulation. That holding was based on administrative rules governing 
utilities, one of which required all incurred taxes to be included in utilities’ 
reasonable and prudent operating expenses. See Houston Lighting & 
Power, 748 S.W.2d at 441 (citing 16 Tex. Admin. Code § 23.21(b)(1)(D)). 
There is no such rule governing automobile insurers in Texas.

[10] 
Again, the commissioner’s ability to consider without necessarily 
including or excluding the Authority fee in all Article 5.101 rates is critical. 
In this case, Mid-Century did not include the Authority fee in its Article 5.101 
filings. Accordingly, the commissioner accounted for that payment in his review 
under Article 21.35B(a)(2). But if, as Ademaj and the concurrence fear, an 
insurer were to attempt to double charge, the commissioner’s flexibility would 
allow him to adjust the Article 5.101 fees accordingly. See Article 
5.101, § 3(c)–(h). Article 5.101 also empowers the Commissioner to disapprove 
such surreptitious rate-filings. Id. § 3(f)–(h). We are confident that, 
contrary to the concurrence’s suggestion, ___ S.W.3d at ___, courts will 
interpret terms like “policy fee” to prevent the wrongful imposition of the 
section 3(o) expenses. See Article 21.35B(a); Article 5.101 § 
3(o).

[11] 
The Act is similar to Article 5.101 in that it allows the commissioner to set a 
presumptive premium rate for credit life, credit accident, and health insurance 
and then permits credit insurers to charge premiums up to 30% above or below the 
presumptive premium rate. Tex. Ins. Code 
§§ 1153.103(a), 1153.105. 

[12] 
Although we do not adopt the Montemayor court’s interpretation of Article 
21.35B, the case’s significance as an example of the commissioner reining in an 
insurer’s attempt to double charge remains.