# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00716-CV

**Janos Farkas, Appellant**

**v.**

**Wells Fargo Bank, N.A.; and Brice, Vander Linden & Wernick, P.C.,
n/k/a Buckley Madole, P.C., Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. D-1-GN-11-003692, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Janos Farkas appeals from the trial court's order denying his motion for summary judgment and granting the traditional and no-evidence summary-judgment motions of appellees Wells Fargo Bank, N.A. (Wells Fargo) and Brice, VanderLinden & Wernick, P.C. (Brice). In five issues, he argues that the trial court erred in overruling his objections to Wells Fargo's summary-judgment evidence, granting the summary-judgment motions of Wells Fargo and Brice, and denying his summary-judgment motion. We will affirm the trial court's order.

## BACKGROUND

The record shows that on January 11, 2007, Farkas executed an agreement with Wells Fargo to obtain a home equity line of credit in the amount of $103,441. The debt was secured by a deed of trust on Farkas's home in Austin. The deed of trust identified "Wells Fargo Bank, N.A." as the lender. On April 21, 2011, Brice, a law firm, sent a "Notice of Default and Intention to

Accelerate" to Farkas, stating that it represented "Wells Fargo Home Equity" and that Farkas had defaulted on the loan, and providing the amount required to cure the default. On May 12, 2011, Farkas sent a letter to Brice "disputing the debt" and requesting "a validation of debt under the Fair Debt Collection Practices Act." On May 24, 2011, Brice sent a response providing, among other things, the "default cure amount," including taxes and fees, and the "payoff amount" for the debt. Brice's response included attachments detailing the amounts due.

On June 9, 2011, Farkas sent a letter to Brice stating that "[t]he reinstatement amount . . . now also contains an amount of $14,623.53 for [t]axes" and requesting "proof and verification that this amount was properly charged to the subject loan." On June 23, 2011, Brice sent a "Notice of Acceleration" to Farkas, providing notice that Wells Fargo was accelerating the maturity date of the note and planning to apply for a court order allowing it to foreclose on the lien. Wells Fargo filed an application for the court order on September 14, 2011. On October 17, 2011, Farkas sent a letter to Brice "requesting the clarification of the reinstatement amount of the subject loan."

On August 31, 2012, Farkas sent a notice to Wells Fargo, detailing ways in which he alleged that Wells Fargo "failed to comply with the Lenders obligation on the subject loan." On July 28, 2013, before Wells Fargo had obtained a court order allowing foreclosure, Farkas filed the underlying suit against Wells Fargo and Brice, alleging violations of the Texas Constitution, the Texas Debt Collection Practices Act, and the Texas Civil Practice and Remedies Code. The actions taken by Wells Fargo and Brice that Farkas alleged as the basis of his claims occurred in the letters providing notice of default sent to Farkas in the foreclosure proceeding. Farkas alleged that the letters: (1) improperly referred to the lender as "Wells Fargo Home Equity" rather than "Wells Fargo

2

Bank," (2) improperly referred to a "non-judicial foreclosure" rather than a foreclosure by court order, (3) misrepresented the amount of the debt, (4) referenced an incorrect loan number, and (5) were not sent at least 30 days before Wells Fargo filed a notice of acceleration on the loan. He further asserted that Wells Fargo failed to cure the alleged errors after receiving notice of them.

On December 5, 2011, Farkas filed a "Notice of Filing Civil Suit, Plea in Abatement" in the foreclosure suit informing the trial court that he had filed a separate civil suit against Wells Fargo and Brice and asking the trial court to abate the foreclosure proceeding while his civil suit was pending. Brice sent a letter to the trial court on January 3, 2012, informing the trial court that Wells Fargo did not contest Farkas's plea in abatement. The following day, the trial court granted the plea in abatement.

Wells Fargo and Brice moved for traditional and no-evidence summary judgment on all of Farkas's claims in his separate suit. Farkas objected to some of Wells Fargo's summary-judgment evidence and also filed his own motion for summary judgment.[1] Ten days before the trial court rendered the order that is the subject of this appeal, Wells Fargo filed a notice of non-suit in the foreclosure proceeding.[2] In its final order in this case, the trial court granted Wells

---

[1] Although Farkas called his summary-judgment motion a *partial* motion for summary judgment, the substance of the motion requests summary judgment against both defendants on all of Farkas's claims. We therefore treat the motion as a request for a final summary judgment.

[2] We take judicial notice of Wells Fargo's notice of non-suit and other documents from the district clerk's file in the foreclosure suit. We may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201(b); *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012); *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 576 n.2 (Tex. App.—Austin 2012, no pet.).

3

Fargo's and Brice's motions, denied Farkas's motion, and overruled Farkas's objections to Wells Fargo's summary-judgment evidence. This appeal followed.

## DISCUSSION

In five issues, Farkas contends that the trial court erred in: (1) overruling his objections to Wells Fargo's summary-judgment evidence; (2) granting Wells Fargo's summary-judgment motion on his claim under the Texas Constitution; (3) granting the summary-judgment motions of Wells Fargo and Brice on his claim under the Texas Debt Collection Practices Act; (4) granting the summary-judgment motions of Wells Fargo and Brice on his claim under the Texas Civil Practice and Remedies Code; and (5) denying his summary-judgment motion. We will address each of the issues below.

### *Summary-Judgment Evidence*

In his first issue, Farkas contends that the trial court erred in overruling his objections to three affidavits that Wells Fargo submitted as summary-judgment evidence. The affidavits to which he objected were those of Michael Dolan, Research and Mediation Manager and custodian of records at Wells Fargo; Sammy Hooda, an attorney and custodian of records at Brice, which was the law firm representing Wells Fargo in the foreclosure proceeding; and B. David L. Foster, a partner with the firm representing Wells Fargo in Farkas's separate suit.

We review evidentiary rulings in summary-judgment proceedings under an abuse-of-discretion standard. *See Ordonez v. Solorio*, 480 S.W.3d 56, 67–68 (Tex. App.—El Paso 2015, no pet.); *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort

4

Worth 2008, pet. denied); *Owens v. Comerica Bank*, 229 S.W.3d 544, 548 (Tex. App.—Dallas 2007, no pet.); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (trial court's decision to admit or exclude evidence is reviewed for abuse of discretion). A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* Further, to establish reversible error on an evidentiary complaint, the complaining party must show that the trial court erred in considering the evidence and that the error probably caused rendition of an improper judgment. *See Horizon/CMS*, 34 S.W.3d at 906; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995).

## A.    Dolan's Affidavit

Farkas contends that the trial court erred in overruling his objection to Dolan's affidavit because (1) the affidavit contains inadmissible hearsay, (2) statements in the affidavit are not readily controvertible, (3) Dolan's "claimed 'personal knowledge' appears to be derived solely from reviewing records created by others," and (4) the affidavit is inconsistent with Wells Fargo's other summary-judgment evidence.

For both the first and second arguments—that the affidavit contains inadmissible hearsay and that it is not readily controvertible—Farkas points to one portion of the affidavit, in which Dolan states: "'Wells Fargo Home Equity' is a division of 'Wells Fargo Bank, N.A.' and is not a separate legal entity. Home equity loans and lines of credit were available through Wells Fargo Home Equity Group." To begin with, Farkas does not cite to any legal authority in support of his

hearsay argument. We also disagree that the portion of the affidavit challenged by Farkas is hearsay.

Hearsay is "a statement, *other than one made by the declarant* . . . offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Because Dolan is the declarant in the affidavit, his statement is not hearsay. Regarding his argument about Dolan's statement not being readily controvertible, the basis of the argument is unclear but seems to be that Dolan did not provide documents to support the challenged statement. However, Farkas does not cite to any authority to support this assertion or further explain it. An appellant's brief must concisely state all issues or points presented for review and, among other things, "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). The appellate court has no duty to brief issues for an appellant. *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 783 (Tex. App.—Dallas 2013, no pet.). In the absence of appropriate record citations or a substantive analysis, a brief does not present an adequate appellate issue. *Ross*, 462 S.W.3d at 500; *Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.). Accordingly, Farkas has failed to properly present this argument for our consideration.

In Farkas's third argument, he challenges Dolan's "personal knowledge" of the matters in the affidavit. "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f). Farkas contends that Dolan does not show in his affidavit that he has personal knowledge because his alleged personal knowledge "appears to be derived solely from reviewing records created by others" and because he "does not

6

claim to have created or maintained the records." Dolan states in the affidavit that he is "a custodian of the records of Wells Fargo" and that he has "also personally reviewed Wells Fargo's records regarding the mortgage debt at issue in the above-captioned lawsuit." He further states that:

> Part of my job responsibilities include researching the facts of mortgage loans associated with litigation for which Wells Fargo acts or acted as the mortgagee and/or mortgage servicer. I have gained personal knowledge of the facts stated herein through my experience in the mortgage industry, my job duties and responsibilities, my personal investigation, and my review of the Loan Records . . . . During my 33 years of experience in the mortgage industry, including 28 years as an employee of Wells Fargo and its predecessor institutions, I have created, reviewed, and analyzed hundreds of loan records . . . . I am familiar with Wells Fargo's record keeping system. I have had access to and reviewed various corporate and business records of Wells Fargo, and have had the opportunity to review the business records and account information related specifically to the Loan at issue in this case.

Again, Farkas does not cite to any authority for his proposition that Dolan's years of experience and review of the relevant documents was insufficient to establish that he had personal knowledge of the matters in his affidavit. Farkas does not cite to any authority stating that an affiant must *create* documents in order to have personal knowledge of them. To the contrary, the affiant in a business-records affidavit is considered a "qualified witness" if the person has personal knowledge of the business's record-keeping practices or of the facts contained within the business records. *See* Tex. R. Evid. 602, 803(6), 902(10); *Rodriguez v. Citimortgage, Inc.*, No. 03-10-00093-CV, 2011 WL 182122, at *4 (Tex. App.—Austin Jan. 6, 2011, no pet.) (mem. op.); *In re E.A.K.*, 192 S.W.3d 133, 142 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Further, an affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts, and it is sufficient for him to state that he is personally acquainted with

7

the facts and that he has access to, has reviewed, and is familiar with the records attached to the affidavit. *See Scott v. U.S. Bank, Nat'l Ass'n*, No. 02-12-00230-CV, 2014 WL 3535724, at \*3 (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.); *Farkas v. Aurora Loan Servs., LLC*, No. 05-12-01095-CV, 2013 WL 6198344, at \*3 (Tex. App.—Dallas Nov. 26, 2013, pet. denied) (mem. op.); *Valenzuela v. State & Cty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because Dolan's affidavit meets these requirements, we reject this argument.

We similarly reject Farkas's further contention that Dolan's affidavit does not establish that he has personal knowledge because Dolan stated that he has been employed by Wells Fargo "and its predecessor institutions" for 28 years. Farkas argues with no supporting evidence that Dolan's statement is problematic because "Wells Fargo Bank, N.A.'s lineage can be traced back to 1852 with respect to banking services" and because it is not possible for Dolan to have worked at a "predecessor institution" before 1852. Farkas cites to no authority in support of his argument. Because we have already determined that Dolan's affidavit is sufficient to establish his personal knowledge of the matters within it, and because Farkas does not cite to any authority for the proposition that Dolan's statement somehow negates his personal knowledge, we reject this argument.

Farkas next argues that the trial court should have sustained his objection to Dolan's affidavit because the affidavit "contains inconsistencies when compared to [Wells Fargo's] other [summary-judgment] evidence." The alleged inconsistencies involve differences between Dolan's recitation of the amounts required to cure Farkas's default on the loan on certain dates and other

8

summary-judgment evidence allegedly stating different amounts. Wells Fargo argues that the alleged inconsistencies are merely differences between the amounts owed on different dates (as a result of the impact of expenses that accrue over time, such as interest, taxes, and attorney's fees) and differences between the amount required to cure Farkas's default and the amount required to pay off the entire loan. Farkas fails to address the impact of the different dates on which the amounts were owed and the different types of payments referenced, and he again fails to cite to any authority supporting his argument. Accordingly, Farkas did not properly present this argument for review. *See* Tex. R. App. P. 38.1(i); *Ross*, 462 S.W.3d at 500; *Liberty Mutual*, 150 S.W.3d at 648.

Farkas also fails to show how the trial court's judgment turns on any of the challenged portions of Dolan's affidavit, which is a showing required before an evidentiary ruling could constitute reversible error. *See Alvarado*, 897 S.W.2d at 753–54. Appellate courts do not overturn a trial court's judgment unless the trial court's alleged erroneous evidentiary ruling probably caused the rendition of an improper judgment. *See Horizon/CMS*, 34 S.W.3d at 906; *see also* Tex. R. App. P. 44.1(a)(1). Here, Farkas argues only that the affidavit was used to "establish disputed facts," such as "amounts allegedly owed and to whom they were owed," and he then makes a conclusory assertion that Wells Fargo's summary-judgment motion would have been denied if the trial court had excluded Dolan's affidavit. Because Farkas has not provided any argument explaining how the allegedly erroneously admitted affidavit was controlling on a material issue dispositive to the trial court's summary judgment or how the outcome would have been different had the trial court sustained his objections, he has failed to show reversible error with respect to his complaints about Dolan's affidavit. *See* Tex. R. App. P. 44.1.

9

Based on the foregoing, we conclude that the trial court did not err in overruling Farkas's objections to Dolan's affidavit.

### B. Hooda's and Foster's Affidavits

Farkas's sole argument about the alleged inadmissibility of Hooda and Foster's affidavits is that the affidavits and Dolan's affidavit "give wildly varying accounts as to amounts allegedly owed. The conflicting portions of all of these declarations should be struck due to inconsistency." Farkas points to nothing specific in either of the affidavits and cites to no authority in support of his argument. Objections to affidavits are inadequate if they fail to identify specific objectionable portions of the affidavits or to explain why any particular passages should be disregarded. *See Seaprints, Inc. v. Cadleway Props., Inc.*, 446 S.W.3d 434, 442 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Further, as stated above, an appellant waives error if he does not provide a clear and concise argument for the contentions made with appropriate citations to authorities and to the record. *See* Tex. R. App. P. 38.1(i); *Liberty Mutual*, 150 S.W.3d at 648. Because Farkas has not provided a substantive analysis and argument regarding alleged problems with Hooda's and Foster's affidavits, he has not presented anything for our review. *See Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861–62 (Tex. App.—Dallas 2012, no pet.); *Liberty Mutual*, 150 S.W.3d at 648.

We further note that, like his argument with respect to Dolan's affidavit, Farkas fails to show how the trial court's judgment turns on any part of Hooda or Foster's affidavits. *See Alvarado*, 897 S.W.2d at 753–54. We therefore conclude that Farkas has failed to show error in the trial court's ruling on the affidavits.

### C.     Conclusion Regarding Affidavits

Because Farkas has not shown a basis for reversal of the trial court's decision overruling his objections to the three affidavits submitted by Wells Fargo in support of its summary-judgment motion, we overrule his first issue.  *See Horizon/CMS*, 34 S.W.3d at 906; *Alvarado*, 897 S.W.2d at 753–54.

## *Summary-Judgment Motions*

In his remaining four issues, Farkas challenges the trial court's grant of Wells Fargo's and Brice's traditional and no-evidence summary-judgment motions and the trial court's denial of his summary-judgment motion.

### A.     Standard of Review

We review the trial court's grant or denial of summary judgment de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  A no-evidence motion for summary judgment under rule 166a(i) must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  The opponent must then present summary-judgment evidence raising a genuine issue of material fact to support the challenged elements.  *Id.*  A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence supporting the existence of the challenged element.  *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).  "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded

11

people to differ in their conclusions.'" *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

A traditional motion for summary judgment must show that there is no genuine issue as to a specified material fact and, therefore, that the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). For a defendant to prevail on a traditional motion for summary judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or he must conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Kalyanaram v. University of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). If the movant meets its burden, then and only then must the non-movant respond and present evidence raising a fact issue. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex.1999). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

When a motion for summary judgment presents both no-evidence and traditional grounds, we typically first review the propriety of the summary judgment under the rule 166a(i) no-evidence standards. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). However, in the interest of efficiency, we may review a summary judgment under the traditional standard of rule 166a(c) first if the application of that standard would be dispositive. *Melendez*

12

*v. Citimortgage, Inc.*, No. 03-14-00029-CV, 2015 WL 5781103, at *3 (Tex. App.—Austin Oct. 2, 2015, pet. denied) (mem. op.); *see also* Tex. R. App. P. 47.1.

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and render the judgment that the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Here, the parties filed cross-motions for traditional summary judgment, and Wells Fargo and Brice also filed no-evidence motions for summary judgment. We will apply the applicable summary-judgment standards as necessary with respect to each of Farkas's claims. *See* Tex. R. Civ. P. 166a(c) (traditional); *id.* R. 166a(i) (no evidence).

Further, when a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, as happened in this case, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life*, 128 S.W.3d at 216; *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### B. Claims Against Brice

In its joint traditional and no-evidence summary-judgment motion, Brice argued that it was entitled to summary judgment on all of Farkas's claims on the basis of attorney immunity. Brice asserted that it was protected by attorney immunity because all of Farkas's claims were based

13

on conduct that occurred during Brice's representation of Wells Fargo in the foreclosure proceeding. Attorney immunity is an affirmative defense. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Thus, to be entitled to summary judgment, Brice must have established that there is no genuine issue of material fact as to whether its conduct was protected by the attorney-immunity doctrine and that it is entitled to judgment as a matter of law. *Id.*; *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

Generally, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation. *Cantey Hanger*, 467 S.W.3d at 481. The purpose of this defense is to ensure "loyal, faithful, and aggressive representation by attorneys employed as advocates." *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). "An attorney is given latitude to 'pursue legal rights that he deems necessary and proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Id.* at 483 (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). If an attorney proves that his conduct is "part of the discharge of his duties to his client," immunity applies. *Id.* at 484.

The allegations Farkas made in his petition with respect to Brice all involve the two letters Brice sent to Farkas informing him that he was in default and that Wells Fargo would foreclose on the loan if Farkas did not cure the default. The allegations include the following alleged violations of the debt collection practices act and the civil practice and remedies code: threatening a "non-judicial foreclosure" of Farkas's property when the property could be foreclosed only by court

14

order, improperly identifying the lender as "Wells Fargo Home Equity" rather than "Wells Fargo Bank," misrepresenting the "character, extent, or amount of the consumer debt," and sending "numerous documents" to Farkas with knowledge that the documents were fraudulent.

Farkas does not dispute that all of the alleged conduct undertaken by Brice was done in connection with its representation of Wells Fargo other than to allege in his brief that attorneys "are liable for their own torts" and that an attorney who "participates in fraudulent activities" is engaging in conduct that is "foreign to the duties of an attorney." He further states that he "asserted statutory causes of action against Brice for violations of [the debt collection practices act and the civil practice and remedies code] . . . and [t]here is no 'safe harbor' for attorneys, their employers, or the corporations which violate these statutes on the basis that they are 'representing someone else.'" In support of his argument, he cites to two cases for the proposition that attorney immunity does not apply where an attorney participated in fraudulent activities while representing a client. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 793–794 (Tex. 1999); *Poole v. Houston & T.C. Ry, Co.*, 58 Tex. 134, 137 (1882). However, the Texas Supreme Court has made clear that "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Cantey Hanger*, 467 S.W.3d at 484. The letters sent to Farkas by Brice were notices informing Farkas that Wells Fargo had retained Brice, that Wells Fargo was beginning foreclosure proceedings, and that Farkas could stop the foreclosure if he cured the default.[3] As in *Cantey*

---

[3] We also note that, in support of its motion for summary judgment, Brice attached an affidavit from one of its attorneys, in which the attorney stated, among other things, that:

[Brice] and its attorneys were retained by [Wells Fargo] as counsel to commence

15

*Hanger*, the type of conduct alleged here "falls squarely within the scope of" Brice's representation of Wells Fargo in the foreclosure proceedings. *Id.* at 485.

Farkas also contends that attorney immunity does not apply to Brice because "Brice is a professional corporation," "not an attorney-at-law," and a "professional corporation is an entity distinct from its constituent shareholders" and "is not even capable of being licensed as an attorney." However, he does not provide any authority for this argument, and to the contrary, case law shows that law firms are treated the same as individual lawyers in the attorney-immunity context. *See Igbal v. Bank of Am., N.A.*, 559 Fed. Appx. 363, 365–66 (5th Cir. 2014); *Cantey Hanger*, 467 S.W.3d at 486.

In another argument, Farkas asserts that attorney immunity applies only for attorneys involved in litigation, and Brice's actions here were not conducted "in the course of any underlying litigation." Again, Farkas does not provide any authority supporting this argument and has therefore waived it. *See* Tex. R. App. P. 38.1(i); *Liberty Mutual*, 150 S.W.3d at 648. We also note, however, as did the supreme court in *Cantey Hanger*, that "[t]he majority of Texas cases addressing attorney immunity arise in the litigation context[,] [b]ut that is not universally the case." 467 S.W.3d at 482 n.6. The supreme court cited to two cases, both of which are opinions of this Court, that indicate that attorney immunity applies outside of the litigation context. *See id.*; *Campbell v. Mortgage Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin

foreclosure proceedings to enforce the mortgagee's lien against the real property; and to provide [Wells Fargo] with legal representation in protecting its interest related thereto. With respect to the Foreclosure Proceedings, and to the extent [Brice] or any of its attorneys or representatives have had any contact or communication with Janos Farkas, that contact or communication was conducted by [Brice] solely in its capacity as counsel for [Wells Fargo].

16

May 18, 2012, pet. denied) (mem. op.); *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at \*3 (Tex. App.—Austin, July 29, 2008, no pet.) (mem. op.).

Because Brice established as a matter of law that it was entitled to the affirmative defense of attorney immunity, we overrule Farkas's third and fourth issues with respect to his claims against Brice. *See Cantey Hanger*, 467 S.W.3d at 481; *KPMG*, 988 S.W.2d at 748.

## C. Claims Against Wells Fargo Under Texas Constitution

In Farkas's petition, he alleged that several of Wells Fargo's actions in the foreclosure proceedings violated section 50(a)(6) of article XVI of the Texas Constitution. Section 50(a)(6) sets forth the terms and conditions that must be contained in an extension-of-credit agreement before a lender can foreclose on the homestead of a defaulting borrower. *See* Tex. Const. art. XVI, § 50(a)(6); *Garofolo v. Ocwen Loan Servs., L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016). The section has seventeen subsections, one of which provides that a lender must correct any errors in the loan document within 60 days of receiving notice of the errors from the borrower, and that if the lender does not correct the errors, it forfeits all principal and interest of the extension of credit. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x).

Farkas alleged that Wells Fargo violated section 50(a)(6) in the following ways: (1) the "Notice of Default and Intention to Accelerate" sent to Farkas referenced an incorrect loan number and indicated that the debt was owed to "Wells Fargo Home Equity" rather than "Wells Fargo Bank," (2) Wells Fargo did not comply with the terms of the extension-of-credit agreement because it did not provide Farkas with a proper notice of default at least 30 days prior to sending a

"Notice of Acceleration," and (3) Farkas sent notice to Wells Fargo of its alleged failures pursuant to subsection (Q)(x), and Wells Fargo did not cure the failures as required by that subsection. Farkas's requests for relief in his petition under this claim include requests for declaratory judgment, return of forfeited principal and interest on the extension of credit, and attorney's fees.

In its motions for summary judgment, Wells Fargo asserted, among other grounds, that Farkas did not allege valid constitutional claims because he complained only about the foreclosure notices he received, not the extension-of-credit agreement itself, which is the subject of section 50(a)(6). We agree. Section 50(a)(6) addresses only the terms and conditions that are required in *the loan document* in order for a lender to foreclose on the homestead after a default. *See* Tex. Const. art. XVI, § 50(a)(6); *Garofolo*, 497 S.W.3d at 478. The section does not in any way address terms and conditions required in notices and filings in a foreclosure proceeding. Farkas's claims pertain only to alleged errors in the latter, not the former.

Even if his claims involved the terms and conditions of the loan document, the required terms and conditions "are not constitutional rights and obligations unto themselves. They only assume constitutional significance when their absence in a loan's terms is used as a shield from foreclosure . . . [s]ection 50(a) simply has no applicability outside foreclosure." *Garofolo*, 497 S.W.3d at 479. Wells Fargo non-suited its foreclosure suit before the trial court rendered its order in this case. A nonsuit extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862–63 (Tex. 2010); *University of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam). Thus, even if Farkas had claimed there were errors in the terms and conditions of the loan document in an effort to stop the foreclosure, his claims

18

would have been moot. *See National Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (matter is moot if at any stage of proceeding there ceases to be actual controversy between parties).

For the same reasons, Farkas's claim regarding Wells Fargo's failure to cure alleged errors also does not fall under section 50(a)(6) because the section does not require a lender to cure alleged errors in foreclosure notices, and the section does not provide an independent constitutional right outside of the foreclosure context to demand that a lender cure errors in a loan document. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x); *Garofolo*, 497 S.W.3d at 479.

As a matter of law, Farkas has not alleged a cognizable cause of action under the Texas Constitution. We therefore conclude that the trial court did not err in granting Wells Fargo's summary-judgment motions with respect to Farkas's constitutional claims. *See Provident Life*, 128 S.W.3d at 216; *FM Props.*, 22 S.W.3d at 872; *City of Garland*, 22 S.W.3d at 356. Accordingly, we overrule Farkas second issue.

### D. Claims Against Wells Fargo Under Debt Collection Practices Act

Farkas's petition alleged that Wells Fargo and Brice violated sections 392.301 and 392.304 of the Texas Debt Collection Practices Act ("the Act"). *See* Tex. Fin. Code §§ 392.301, .304. Sections 392.301 and 392.304 prohibit debt collectors from using certain threats, coercion, or attempts to coerce or from making fraudulent, deceptive, or misleading representations in their debt-collection practices. *See id.* §§ 392.301, .304. Farkas alleges that Wells Fargo and Brice violated the Act in the following ways: (1) improperly threatening a "non-judicial foreclosure sale" of his homestead in the letters sent to him from Brice giving notice of his default on the loan,

19

(2) improperly identifying the lender as "Wells Fargo Home Equity" instead of "Wells Fargo Bank" in the letters from Brice, and (3) "misrepresent[ing] the character, extent, or amount of the consumer debt." The Act provides a cause of action to recover damages and injunctive relief, and Farkas sought both in his petition. *See id.* § 392.403(a).

Wells Fargo argued in its no-evidence summary-judgment motion that, among other things, Farkas had no evidence that he suffered damages from any of the alleged violations of the Act. In Farkas's response to Wells Fargo's motion, he argued that a "Declaration of Janos Farkas" attached to his summary-judgment motion provided evidence of damages. In the portion of the Declaration he pointed to, he stated, "I have incurred costs in filing and prosecuting this lawsuit. I have experienced mental anguish over the threatened loss of my home which is my residence and homestead." Farkas concedes on appeal that proof of damages is an element of his cause of action under the Act, but he does not address the damages element other than to state that "[Wells Fargo] does not appear to have argued that Farkas was [sic] harmed as a result of [Wells Fargo's] acts. The dispute appears to be over whether [Wells Fargo's] actions were wrongful." However, as stated above, Wells Fargo did in fact argue in its no-evidence summary-judgment motion that Farkas had no evidence of damages, and the trial court could have based its conclusion regarding Farkas's claims under the Act on that ground. Because Farkas has not presented argument or citation on this issue, he has waived his complaint regarding the trial court's grant of Wells Fargo's no-evidence summary judgment motion on his claims under the Act. *See* Tex. R. App. P. 38.1(i); *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997), *superseded by statute on other grounds as stated in General Servs. Comm'n v. Little-Tex Insulation, Co.*, 39 S.W.3d 591, 593 (Tex. 2001); *Devine v. Dallas Cty.*, 130 S.W.3d 512, 514 (Tex. App.—Dallas 2004, no pet.); *see also Fredonia*

20

*State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive point of error due to inadequate briefing).

Even if Farkas had not waived the issue, his statement in the declaration he attached to his summary-judgment motion—that he incurred costs in filing and prosecuting the suit and experienced mental anguish due to the threat of losing his home—is not evidence of damages. To begin with, costs of court and attorney's fees associated with a suit are not damages. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013); *Imagine Auto. Group, Inc. v. Boardwalk Motor Cars, LLC*, 356 S.W.3d 716, 719 (Tex. App.—Dallas 2011, no pet.); *see also* Tex. Fin. Code 392.403(a)(2) ("A person may sue for . . . actual damages sustained as a result of a violation of this chapter."), (b) ("A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs."). In addition, Farkas cannot show damages as a result of a foreclosure because Wells Fargo non-suited its foreclosure suit. Further, Farkas has never disputed that Wells Fargo had the right to foreclose on the property; he complains only about Brice's reference to a *non-judicial* foreclosure in the default notices. In his declaration, he stated only that the threat of foreclosure itself, which he does not dispute was proper based on his defaulting on the loan, caused him mental anguish. That is not evidence that a reference to a *non-judicial* foreclosure caused him mental anguish. Thus, even if he had not waived this issue, he presented no evidence on the element of damages.

Regarding Farkas's claim for injunctive relief under the Act, we review it under the traditional summary-judgment standard, as Wells Fargo moved only for traditional summary judgment on this claim. To obtain injunctive relief, a party must generally show: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and

21

(4) the absence of an adequate remedy at law. *See Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 600 (Tex. App.—Austin 2015, no pet.); *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In Farkas's request for an injunction, he stated that he sought "injunctive relief prohibiting [Wells Fargo] and [Brice] from engaging in conduct in violation of [all of the sections of the Act that he cited in support of his arguments above]." The only complaints he makes are about the language used in the notices of default. When Wells Fargo filed a notice of non-suit in the foreclosure proceeding, it could not continue to rely on the notices of default sent as part of that suit. Accordingly, as a matter of law, Farkas did not and does not face imminent harm from the alleged errors in the notices of default. *See State v. Morales*, 869 S.W.2d 941, 946 (Tex. 1994) ("An injunction will not issue unless it is shown that the respondent will engage in the activity enjoined."); *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no pet.) ("Imminent harm is established by showing that the defendant will engage in the activity sought to be enjoined."). Because an essential element of Farkas's claim for injunctive relief fails as a matter of law, the trial court did not err in granting Wells Fargo's traditional motion for summary judgment on this claim. *See* Tex. R. Civ. P. 166a(c); *Friendswood*, 926 S.W.2d at 282.

Given the foregoing, we overrule Farkas's third issue with respect to his claims against Wells Fargo.

**E.      Claims Against Wells Fargo Under Civil Practice and Remedies Code**

In his claims under section 12.002 of the Texas Civil Practice and Remedies Code, Farkas alleged in his petition that Wells Fargo and Brice violated the statute by:  (1) improperly referring to a "non-judicial foreclosure" in the letters providing notice of default; (2) "misrepresenting the identity of the entity to who debt was owed," and (3) making, presenting, or using "numerous documents communicated to [Farkas] with knowledge that the document or other record [wa]s a fraudulent court record or a fraudulent lien or claim against real or personal property, . . . intent that the document or other record be given the same legal effect as a court record or document of a court, . . . and intent to cause [Farkas] to suffer [injuries]."

Section 12.002 states, in relevant part:

(a)      A person may not make, present, or use a document or other record with:

(1)      knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2)      intent that the document or other record be given the same legal effect as a court record or other document of a court created by or established under the constitution or laws of this state or the United States . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3)      intent to cause another person to suffer:

(A)      physical injury;

(B)      financial injury; or

(C)      mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002.

23

In its no-evidence motion for summary judgment, Wells Fargo argued that Farkas had no evidence to support any of the elements required by section 12.002. On appeal, Farkas does not provide any argument, authority, or citations to the record on the merits of the trial court's grant of no-evidence summary judgment on this claim. Rather, he quotes a sentence from Wells Fargo's no-evidence summary-judgment motion and then argues only the following:

> The rule does not authorize conclusory motions or general no-evidence challenges to an opponent's case. When a no-evidence motion for summary judgment does not challenge specific elements, it must be treated as a traditional motion for summary judgment under Tex. R. Civ. P. 166a(c). Failure to specify the element at issue switches the burden of proof from the nonmovant to the movant and [Wells Fargo has] not disproved any element of the causes of action asserted.

However, Wells Fargo did in fact challenge each of the elements in section 12.002 in its no-evidence motion for summary judgment, stating in its motion that Farkas had no evidence that: (1) Wells Fargo "had knowledge that a lien or claim made, presented, or used was fraudulent," (2) Wells Fargo "made, presented, or used a fraudulent lien or claim with intent that it be given the same legal effect as a valid lien or claim," or (3) that Wells Fargo "made, presented, or used a fraudulent lien or claim with intent to cause [Farkas] injury." By challenging each of the elements set forth in section 12.002, Wells Fargo properly moved for a no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(i) ("The motion must state the elements as to which there is no evidence."). Thus, the burden shifted to Farkas to present evidence raising an issue of material fact on the challenged elements. *See id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

We note at the outset that Farkas did not preserve error regarding the trial court's grant of the no-evidence summary judgment on this claim because, as we stated above, Farkas does

24

not provide any argument, authority, or citations to the record in his brief on this issue. *See* Tex. R. App. P. 38.1(i); *Star-Telegram*, 915 S.W.2d at 473; *Schuetz v. Source One Mortg. Servs. Corp.*, No. 03-15-00522-CV, 2016 WL 4628048, at *6 (Tex. App.—Austin Sept. 1, 2016, no pet. h.) (mem. op.) (citing *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.)); *Liberty Mutual*, 150 S.W.3d at 648.

Even if he had not waived error, Farkas failed to point to any evidence in support of at least one element of his claim: the element requiring proof of knowledge that the document made, presented, or used was a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property. In his response to Wells Fargo's no-evidence summary-judgment motion regarding the knowledge element, Farkas stated, "The 'knowledge' element can be established by [Wells Fargo's] status as a professional in the field of mortgage foreclosure." He cited to his own summary-judgment motion, where he made essentially the same argument, and to a case that does not in fact support his stated proposition. *See Aland v. Martin*, 271 S.W.3d 424 (Tex. App.—Dallas 2008, no pet.). He cited in his motion to a portion of *Aland* in which the appeals court noted that the trial court found that the appellant in that case was "a Board Certified family lawyer and knew, or should have known, that a valid lien cannot be placed against community property without the consent in writing of both parties." *Id.* at 430. However, Farkas failed to provide an argument as to how a board-certified family lawyer under the facts of that case related to a lender under the facts of this case, and even if he had, the appeals court in *Aland* did not decide whether the knowledge element was satisfied. Rather, the trial court "assume[d] without deciding" that the element was satisfied and then concluded that there was no more than a scintilla of evidence to support the third element of the section: intent to cause injury. *Id.* at 431–32, 433.

Thus, *Aland* does not support Farkas's only argument regarding the knowledge element. Accordingly, Farkas failed to point to any evidence in support of the knowledge element of his claim.

### F.    Farkas's Summary-Judgment Motion

Because we conclude that Wells Fargo and Brice were entitled to judgment under either the traditional or no-evidence summary-judgment standards on all of Farkas's claims, we necessarily conclude that Farkas was not entitled to judgment as a matter of law on any of his claims against either party. We therefore overrule his fifth issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order granting Wells Fargo's and Brice's summary-judgment motions, denying Farkas's summary-judgment motion, and overruling Farkas's objections to Wells Fargo's summary-judgment evidence.

_____
Cindy Olson Bourland, Justice

Before Justices Goodwin, Field, and Bourland

Affirmed

Filed:   December 8, 2016

26