# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00324-CV

---

**G. R., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2021-0951A, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

G.R. (Father) appeals from the trial court's decree terminating his parent rights to his infant child (Infant), who was thirteen months old at the time of trial.[1]  *See* Tex. Fam. Code § 161.001(b)(1), .002(c-1).  Father challenges the legal and factual sufficiency of the evidence supporting termination under the predicate statutory grounds.  Father also contends that the Texas Department of Family and Protective Services (Department) violated his due process rights by failing to make reasonable efforts to make it possible to return the infant.  We affirm the trial court's termination decree.

---

[1]  For the child's privacy, we will refer to her by an alias and to her family members by their relationships to her or by aliases.  *See* Tex. R. App. P. 9.8.

BACKGROUND

Infant was born on May 11, 2021. Father was not listed on her birth certificate and was arrested several days later on charges of possession of methamphetamine and incarcerated. On June 9, 2021, the Department received a referral alleging neglectful supervision of Infant by Mother, including that Infant "may not be safe in [Mother's] care due to previous drug use and termination history." During that initial investigation, Mother stated that she did not know who Infant's father was and that "the baby is not [Father's] baby."

On June 14, 2021, the Department filed an original petition requesting termination of parental rights and temporary orders for the protection of Infant. That original petition did not reference Father by name, but instead listed "UNKNOWN" as the father of Infant. After the Infant's hair follicle test returned a positive result for methamphetamine, the Department moved for aggravated circumstances against Mother. At the July 19, 2021, hearing on the motion, Mother for the first time testified that Father was the father of Infant.[2]

Father was thereafter named as the alleged father of Infant in the Department's First Amended Petition filed on July 28, 2021. Although the child protective services (CPS) caseworker testified that a family service plan was filed for Father and a copy sent to him in November 2021, the record does not reflect that any family service plan for Father was timely filed with the trial court.[3] However, the court did order that "unknown father," "pursuant to Section 263.106, comply with each requirement set forth in the Department's original, or any

---

[2] The trial court found that Mother had subjected Infant to aggravating circumstances pursuant to subsections 262.2015(b)(3)(I), (b)(5), and (b)(7), but did not make any aggravated circumstances finding towards Father. *See* Tex. Fam. Code §§ 262.2015(b)(3)(I), (b)(5), (b)(7).

[3] Instead, Father's family service plan was inadvertently filed in a prior termination case involving Father's other children and was not filed in this case until after the trial court had rendered final judgment.

amended plan during the pendency of this suit." Father was transferred to a Texas Department of Criminal Justice substance abuse felony punishment facility (an in-prison therapeutic community) in October 2021, where he remained in custody until May 15, 2022.

The bench trial on the merits began on May 23, 2022. Father's counsel initially announced not ready because counsel had only learned the day of trial of Father's release and the parties were still waiting for the results of a genetic test the trial court had previously ordered. The CPS caseworker testified that the DNA testing was only completed the week before trial and the results were not yet available. After discussions with Father, counsel stated "I know what my client's desires are and I'm ready to advocate for those, if need be," and the trial proceeded.

The initial testimony by three officers focused on several traffic stops of Mother that occurred in March and April 2022 contemporaneous with the pending termination proceeding. The officers' testimony included that a search of Mother's vehicle during a March 2022 traffic stop found four bags of a white crystalline substance weighing approximately eight grams (which tested presumptively positive for methamphetamine) and a search of Mother's purse found a meth pipe that appeared used with black residue. Mother was thereafter arrested for felony possession of a controlled substance.

Vanessa Campanella, the CPS investigator, testified about her April 29, 2020 investigation of neglectful supervision due to family violence allegations relating to the five older children of Father and Mother. According to Campanella, when she asked one of the children whether the parents ever argued, the child acted out the fighting to show Campanella "the hand moves that would happen and the choking moves" and "would punch at the stairwell to show me that's how the punching was occurring." The child also explained that "his parents were having sex while they were in the room." When Campanella interviewed Mother, Mother

3

"admitted to the domestic violence, saying that it is an ongoing thing between them" and that she and Father use "ice."[4] Mother also had red marks on her neck consistent with being choked and bruising on her arms, and she indicated that the children were present when the domestic violence occurred. Campanella also interviewed Father, who admitted to choking and hitting Mother on several occasions and that domestic violence occurred while the children were present.[5] Father admitted to using methamphetamine twice a day and that he kept it on his person "at all times." During her investigation, Campanella also observed one child run into a parking lot and almost get hit by a car while the parents "never reacted towards it." After those children were initially removed, Campanella documented that the children were "all pretty filthy," that some of the children had bruises and/or scratches, and that one child mentioned that he "wanted to have sex like his parents." Hair follicle drug tests were administered, and all the children, as well as Father and Mother, tested positive for methamphetamine and amphetamines. Ultimately, Father's parental rights to those five children were terminated in November 2020 and Mother's parental rights were terminated in April 2021.

Sherry Godfrey, retired Department investigator, then testified regarding the June 2021 investigation for abuse and neglect of Infant. According to Godfrey, Mother stated that she did not know who the father was, that there were three possible fathers, but she did not know their names. She also stated that no, "the baby is not [Father's] baby." Godfrey testified that she had concerns because Mother was being arrested for theft, Mother was "continuing in a manner of theft with the baby in her care," and there were no relatives the baby could be placed

---

[4] "Ice" is slang for a form of methamphetamine. *See In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *2 & n.3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.).

[5] Father later testified that Mother assaulted him, but denied he assaulted Mother.

with. Godfrey also testified that she did not have any contact with Father. Godfrey stated that she "had no reason at the time to not believe" Mother because she repeatedly denied that Father was the father of Infant.

Venus Alvarez testified as the CPS caseworker assigned to Infant's case. Infant tested positive for methamphetamine metabolite and methamphetamine on June 15, 2021, shortly after being removed, and Mother previously tested positive while pregnant with Infant. Alvarez stated that she never spoke with Mother because Mother never returned her calls or emails. Alvarez testified that she first became aware that Father may be the father of Infant based on Mother's testimony during an October 2021 hearing. Alvarez testified that she filed a service plan for Father with the trial court in November 2021 and sent a copy by regular mail to his treatment facility (although she did not know whether he received it). Alvarez stated that she sent Father monthly letters while he was at the treatment facility, and that Father responded with several letters back. Alvarez testified that as of the date of trial, Father had not been acknowledged as the father of Infant, was not on the birth certificate, and had not yet provided any proof on what he had done to improve himself while in custody except for a picture of a certificate from his facility. She testified that Father was still on probation and that his probation was transferred to Dallas. Alvarez testified that, as of the time of trial, Father had not verified his Dallas address or his employment, and was "[n]ot to [her] knowledge" in a position to receive Infant or provide for her.

Father testified that he was the father of Infant and wanted to accept responsibility for being the father. Father testified that he arrived at the hospital ten minutes after the birth of Infant but did not sign the birth certificate "because we were debating if it was mine or not." He saw Infant "a couple of times" after she was born when he took her to appointments and bought

5

diapers or formula. He also admitted that he previously used methamphetamine "twice a day" for two years, and that his drug use continued until the day he was arrested in May 2021.

Father stated that he subsequently took "AA classes, I did Anger Management, and I did Family Violence" courses during his treatment program. Although he admitted he had a substance abuse problem, he testified that it was no longer a problem at the time of trial and that he would "be clean" if drug tested. Father testified that he would be on probation for five years, and that if probation were revoked he would go back into custody.

Father testified that he was now in a position to take Infant, that he had a room with a crib at his other sister's home in Dallas, and that the sister was willing to take in the child, although he did not know whether that sister and her husband had a criminal history. Father also testified that he had a job remodeling houses, that he worked from 6:00 a.m. until 7:00 p.m., and that his sister would watch Infant during the day. Father stated that he did not have clothes for Infant but had the funds to buy "whatever else she needs."

At the end of trial, the trial court found that Father was the alleged father but could not adjudicate him as the father because of contradictory evidence in the record. The trial court, however, then terminated Father's rights under Section 161.001(b)(1)(E) and found that termination was in the best interest of Infant when "you-all get information that he is indeed the biological father." The trial court also found that, as the alleged father, Father had failed to register with the paternity registry and then terminated his parental rights, if he had any, under Section 161.002(c-1).[6] The trial court signed the final order of termination on June 1, 2022, memorializing those findings and reiterated that clear and convincing evidence supported

---

[6] The trial court also terminated Mother's rights pursuant to Sections 161.001(b)(1)(E). Mother has not joined in this appeal.

terminating Father's parental rights pursuant to Section 161.001(b)(1)(E) should Father "be confirmed through DNA testing to be the father." The record on appeal shows that subsequent genetic testing results filed with the trial court provided that there is a 99.99997% chance Father is Infant's father.

## STANDARD OF REVIEW

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

"The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). When determining legal sufficiency, we consider whether "a reasonable factfinder could form a firm belief or conviction that the finding was true" when the evidence is viewed in the light most favorable to the factfinder's determination and undisputed contrary evidence is considered. *Id*. at 631. When determining factual sufficiency, we consider whether "in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. We must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole

7

arbiter when assessing the credibility and demeanor of witnesses."  *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *see also In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

**DISCUSSION**

Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings under subsections (c-1) and (E).  Father also contends that the Department violated his constitutional due process rights by failing to make reasonable efforts to make it possible to return the child.  Because of the potential implications for future termination proceedings, we first review the evidence supporting the trial court's finding that subsection (E) supports termination.  *See In re N.G.*, 577 S.W.3d 230, 232–33, 237 (Tex. 2019) (per curiam).

*Statutory-Predicate Ground*

The trial court may order termination of the parent-child relationship under subsection (E) if clear and convincing evidence establishes that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."  Tex. Fam. Code § 161.001(b)(1)(E).  "Although parental rights are of constitutional magnitude, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."  *J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00274-CV, 2021 WL 5225432, at *4 (Tex. App.—Austin Nov. 10, 2021, pet. denied) (mem. op.) (quoting *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002)) (quotation marks omitted).

"Endangerment" in this context means exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *See Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *A.C. v. Texas Dep't of Fam. & Protectives Servs.*,

577 S.W.3d 689, 698–99 (Tex. App.—Austin 2019, pet. denied). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (quoting *Boyd*, 727 S.W.2d at 533). "Endangerment does not have to be established as an independent proposition but may instead be inferred from the parental misconduct." *D.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00323-CV, 2020 WL 7395924, at *3 (Tex. App.—Austin Dec. 17, 2020, pet. denied) (mem. op.).

Subsection (E) focuses on the parent's conduct—including acts, omissions, or failures to act—and whether the parent engaged in a voluntary, deliberate, and conscious course of conduct that endangered the child's physical or emotional well-being. *V.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00531-CV, 2020 WL 544797, at *4 (Tex. App.—Austin Feb. 4, 2020, no pet.) (mem. op.) (citing *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.)). "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *J.M.*, 2021 WL 5225432, at *5 (quoting *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *14 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.)). In considering whether a parent's conduct amounts to endangerment under subsection (E), the factfinder may consider conduct that occurred both before the child's birth and after the Department removed the child from the parent's custody. *Id.*; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Drug use may support termination under subsection (E) because it exposes the child to the possibility that the parent may be impaired or imprisoned. *See D.J.*,

9

2020 WL 7395924, at *4 (citing *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)); *A.C.*, 577 S.W.3d at 699; *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied).

Reviewing the record under the applicable standards, we conclude that legally and factually sufficient evidence supports the trial court's finding that Father engaged in conduct or knowingly placed Infant with persons who engaged in conduct which endangered the physical or emotional well-being of Infant. *See* Tex. Fam. Code § 161.001(b)(1)(E).[7] Father testified that he was previously convicted of possessing cocaine in 2011 and served time in prison, that he used methamphetamine twice a day for the two years up until he was arrested in May 2021, that he had a substance-abuse issue, and that he went into custody shortly after Infant was born. *D.H. v. Texas Dep't of Fam. & Protective Servs.*, 652 S.W.3d 54, 61 (Tex. App.—Austin 2021, no pet.) ("In some circumstances, a parent's drug use might be so pervasive or serious that the factfinder could reasonably infer that the drug use is endangering, despite a lack of evidence showing that the drug use caused some other endangering activity or even that the drug use

---

[7] Father contends that the evidence was legally insufficient to support termination under that statutory predicate because the trial court declined to adjudicate that Father was the father of Infant at the hearing, citing contradictory statements of Mother. However, based on the facts before us, the trial court did not err in determining termination of Father's rights under subsection (E). *See* Tex. Fam. Code § 161.002(a) ( "[T]he procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father"); *see also In re M.M.*, No. 07-19-00324-CV, 2020 WL 1265423, at *5 (Tex. App.—Amarillo Mar. 16, 2020, pet. denied) (mem. op.) (concluding trial court could consider termination under section 161.001 even though parent was not adjudicated as father); *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *3 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.) ("[T]he Department properly sought termination of appellant's parental rights under section 161.001(1)(O) even though his paternity had not yet been finally adjudicated."). Furthermore, Father admitted at trial and in his briefing on appeal that he is Infant's father, *see* Tex. Fam. Code § 160.623(a) (authorizing party to admit to paternity of a child "by admitting paternity under penalty of perjury when making an appearance or during a hearing"), and subsequent DNA testing demonstrated that there is a 99.99997% probability Father is Infant's father.

10

occurred while the children were in the parent's direct care."); *see also J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.) ("Evidence of a parent's criminal history, convictions, and resulting imprisonment may establish an endangering course of conduct."). Campanella also testified that Mother and Father had both admitted to drug use during the removal investigation of their five older children. All the older children tested positive for amphetamines and methamphetamine. Moreover, Infant tested positive for amphetamines and methamphetamine approximately one month after birth, and Alvarez testified that Mother had also tested positive while pregnant in March 2021. *See D.H.*, 652 S.W.3d at 62 (explaining that parent's ongoing drug use "jeopardizes the parent-child relationship and subjects the child to a life of uncertainty and instability").

Campanella also testified that during her previous investigation, Mother admitted that domestic violence was "an ongoing thing between them," Mother presented with red marks on her neck "consistent with being choked," Father admitted to "choking and hitting" Mother, and one of the children "acted out the fighting to show" Campanella "the choking moves" and "would punch at the stairwell to show [her] that's how the punching was occurring." *See J.G.*, 592 S.W.3d at 524 ("Evidence of domestic violence is also relevant to endangerment, even if the violence is not directed at the child."). Campanella testified that neither Father nor Mother reacted when one of their children ran out into the parking lot and "almost got hit by a car," and that the older children were "all pretty filthy" at removal.

Father contends that there was no testimony that he had ever abused or neglected Infant prior to her removal and that evidence about his drug use and domestic violence concerned older legal cases and the prior removal of his older children in April 2020. However, the trier of fact is entitled to consider parental actions before and after his child's birth when

11

determining endangerment. *See J.G.*, 592 S.W.3d at 525. Father also admits he used methamphetamine up until his May 2021 arrest, that he was arrested on drug-related charges several days after Infant's birth, and that prior to his arrest he only saw Infant "a couple of times" while Infant remained in Mother's care. *See D.H.*, 652 S.W.3d at 62 (explaining that parent's ongoing drug use "jeopardizes the parent-child relationship and subjects the child to a life of uncertainty and instability"); *see also In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied) ("[E]vidence that another parent allowed a child to be around a parent or other persons using drugs, can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E)."). Godfrey explained that Infant was subsequently removed from Mother approximately a month later based on concerns that Mother "was continuing to use drugs; that she was continuing in a manner of theft with the baby in her care"; and was facing an impending arrest. *See R.C.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00687-CV, 2022 WL 2231306, at *5 (Tex. App.—Austin June 22, 2022, pet. struck) (mem. op.) (concluding legally sufficient evidence supported subsection (E) finding based in part on "evidence that Father was aware of Mother's drug use and should have known that Child was being harmed and in danger of further harm in Mother's care, but that he did not protect Child").[8]

---

[8] Father also complains that the Department failed to create a service plan or make any reasonable effort to return Infant, but those are not requirements for finding sufficient evidence supporting termination under subsection (E). *See A.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-13-00610-CV, 2014 WL 641456, at *5 (Tex. App.—Austin Feb. 13, 2014, no pet.) (mem. op.) ("In the present case, however, the termination was ordered pursuant to section 161.001, not section 161.003, and the requirements for termination under 161.003 are therefore not implicated in this case."); *Karl v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-03-00655–CV, 2004 WL 1573162, at *5 n. 3 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (noting section 161.001(b)(1)(E) contains no requirement that Department make reasonable efforts to return child to parent).

After considering all the evidence in the light most favorable to the district court's finding, along with any undisputed evidence contrary to the finding under subsection (E), we conclude that a reasonable factfinder could have formed a firm belief or conviction that Father engaged in a course of conduct or knowingly placed the child with persons who engaged in conduct that endangered Infant's physical or emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 631. In addition, in view of the entire record, we conclude that the disputed evidence is not so significant that the district court, as factfinder, could not have formed a firm belief or conviction that Father engaged in conduct or knowingly placed the child with persons who engaged in conduct endangering Infant. *See In re A.C.*, 560 S.W.3d at 631. Consequently, the evidence is both legally and factually sufficient to support the district court's finding that termination of Father's parental rights was warranted under subsection (E).[9] We overrule Father's second issue on appeal.[10]

*Reasonable Efforts to Return*

Father also contends that the Department violated his constitutional due process rights by failing to create a service plan for Father or to make reasonable efforts to make it

---

[9] Father also challenges that there is legally and factually sufficient evidence supporting termination pursuant to Section 161.002(c-1). *See* Tex. Fam. Code § 161.002(c-1). Because we have determined that legally and factually sufficient evidence supports the trial court's termination order under subsection (E), we need not address Father's challenge of the trial court's finding that termination is warranted under subsection (c-1). *See D.J.*, 2020 WL 7395924, at *5; *see also* Tex. R. App. P. 47.1.

[10] Father did not submit any briefing or substantive arguments challenging the best interest finding. *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain ""clear and concise argument for the contentions made, with appropriate citations to authorities and to the record""); *see also In re R.H.W. III*, 542 S.W.3d 724, 742 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Father failed to adequately brief any argument in support of this issue, and so has waived the complaint."); *Liberty Mut. Ins. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.) ("Bare assertions of error without argument or authority waive error.").

possible to return the child. *See* Tex. Fam. Code §§ 262.2015(a), 263.101. However, Father has failed to preserve this issue for appellate review, which requires that the party "present[ed] to the trial court a timely request, objection, or motion, and state the specific grounds for the ruling sought." *In re A.N.*, No. 10-16-00394-CV, 2017 WL 4080100, at *2 (Tex. App.—Waco Sept. 13, 2017, no pet.) (mem. op.) (citing Tex. R. App. P. 33.1(a)(1)). The record on appeal does not demonstrate that Father objected or otherwise raised a timely request regarding this issue so that this specific ground was presented to the trial court. Tex. R. App. P. 33.1(a)(1). Accordingly, assuming *arguendo* that failing to create a service plan is a constitutional error, Father has failed to preserve this complaint for appellate review. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (complaint based on constitutional error must be preserved in the trial court); *see also In re L.C.L.*, 599 S.W.3d 79, 90 (Tex. App.—Houston [14th Dist.] 2020 pet. denied) (concluding parent failed to preserve complaint that providing written service plan to parent in language parent does not understand constitutes a constitutional due process error).[11]

---

[11] Assuming the Department had a duty to take reasonable efforts to make it possible to return the child, *but see Karl*, 2004 WL 1573162, at *5 (noting that Section 161.001 "does not require the Department to make any efforts to return the child to the parent"), Alvarez testified that she created a service plan and mailed it to Father (although the record reflects that the plan was initially inadvertently filed in the wrong termination proceeding). *See In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) ("The State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent."). Moreover, Alvarez repeatedly sent letters to Father after tracking down his location, and Godfrey separately testified that one of Father's sisters was considered for placement but that sister's partner had a DUI, eliminating the possibility of placement with that sister. *See In re L.C.M.*, 645 S.W.3d 914, 921–22 (Tex. App.—El Paso 2022, no pet.) (concluding that Department "actively attempt[ing] to engage Father directly" and efforts to place subject child with relatives supported finding that Department had "made reasonable efforts to return the child").

14

## CONCLUSION

Having concluded there was legally and factually sufficient evidence supporting the trial court's termination under subsection (E) and overruling Father's other issue, we affirm the trial court's final decree terminating Father's parental rights to Infant.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:  November 16, 2022